UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                     :
           Plaintiff,              :
                                       :      12-cv-8466 (VM)
       -  against  -           :
                                       :
CR INTRINSIC INVESTORS, LLC,     :
MATHEW MARTOMA, and DR. SIDNEY     :
GILMAN,                              :
              Defendants,       :         **OPINION**
                                       :
and                                   :      **DECISION AND ORDER**
                                       :
CR INTRINSIC INVESTMENTS, LLC,    :
S.A.C. CAPITAL ADVISORS, LLC,     :
S.A.C. CAPITAL ASSOCIATES, LLC,    :
S.A.C. INTERNATIONAL EQUITIES, LLC, :
and S.A.C. SELECT FUND, LLC,      :
                                       :
           Relief Defendants.   :
------------------------------------X
**VICTOR MARRERO, United States District Judge.**

     By Decision and Order dated April 15, 2013 (the "Conditional Approval Order"), the Court granted conditional approval of six proposed consent judgments (the "Proposed Consent Judgments"): one between plaintiff United States Securities and Exchange Commission (the "SEC") and defendant CR Intrinsic Investors, LLC ("CR Intrinsic"), and one each between the SEC and relief defendants CR Intrinsic Investments, LLC; S.A.C. Capital Advisors, LLC; S.A.C. Capital Associates, LLC; S.A.C. International Equities, LLC; and S.A.C. Select Fund, LLC (collectively, the "Relief

Defendants"). See S.E.C. v. CR Intrinsic Investors, LLC, 939 F. Supp. 2d 431, 444 (S.D.N.Y. 2013). Each Proposed Consent Judgment indicated that the defendant to whom the judgment corresponded consented to entry of judgment against it "without admitting or denying the allegations of the Complaint . . . ." Id. at 433-34. In the Conditional Approval Order, the Court noted that the proper scope of judicial review of these "neither admit nor deny" provisions was the subject of much debate, including a pending Second Circuit appeal. Id. at 434. It was the Court's view that "[t]he Second Circuit's ultimate decision in the [pending] case must have some bearing in how the Court treats the issue now before it." Id. at 444. The Court thus conditioned its approval of the Proposed Consent Judgments "upon the disposition of the pending appeal in the U.S. Court of Appeals for the Second Circuit in S.E.C. v. Citigroup Global Markets, Inc." Id.

The Second Circuit handed down its decision in Citigroup on June 4, 2014. See S.E.C. v. Citigroup Global Markets, Inc. (Citigroup IV), --- F.3d ---, Nos. 11-5227-cv (L), 11-5375-cv(con), 11-5242-cv(xap), 2014 WL 2486793 (2d Cir. June 4, 2014). In light of Citigroup IV, the parties now request that the Court enter their Proposed Consent Judgments.

2

Subsequent developments since the date of the
Conditional Approval Order -- notably, the resolution of
two parallel criminal cases that arose out of the same
facts as this case, one against CR Intrinsic and relief
defendant S.A.C. Capital Advisors, L.P. ("SAC Capital"),
and another against CR Intrinsic employee Mathew Martoma
("Martoma"), who is also a co-defendant in this case --
bear strongly on the issue as it is now before the Court.
In view of these circumstances, the Court is persuaded that
Citigroup IV controls the disposition of the open issue in
this action, and compels the Court's approval of the
Proposed Consent Judgments on the terms the parties agreed
upon.

## I. <u>BACKGROUND</u>

The Court assumes familiarity with its prior
Conditional Approval Order.  Briefly restated, the SEC
filed an Amended Complaint dated March 15, 2013 (the
"Amended Complaint"), which alleged that CR Intrinsic
participated in an insider trading scheme that caused hedge
fund portfolios managed by CR Intrinsic and S.A.C. Capital
Advisors, LLC to generate approximately $275 million in
illegal profits or avoided losses.  (Dkt. No. 25.)  The
Amended Complaint also alleged a claim of unjust enrichment

against the Relief Defendants, which, according to the SEC, directly benefitted from the insider trading scheme.  (<u>Id.</u>)

On the same day that the Amended Complaint was filed, the SEC provided the Court with the Proposed Consent Judgments.  (Dkt. No. 30.)  Each of the Proposed Consent Judgments provided for injunctive relief and damages: they enjoined each defendant from committing future violations of federal securities laws, and required them to disgorge their alleged wrongful profits (plus interest) and pay a civil penalty.  In total, CR Intrinsic was held jointly and severally liable for over $600 million in wrongful profits, penalties, and interest, and the Relief Defendants were each held jointly and severally liable for a portion of that amount.  The Proposed Consent Judgments indicated that CR Intrinsic and the Relief Defendants consented to entry of judgment against them "without admitting or denying the allegations of the [Amended] Complaint."  (<u>Id.</u>)  The SEC also filed a statement from each defendant consenting to entry of the Proposed Consent Judgments.  Those statements each provided that the respective defendant consented to the entry of judgment against it "[w]ithout admitting or denying the allegations of the [Amended] Complaint . . . ."  (<u>Id.</u>)

4

The Court held a hearing on March 28, 2013, to consider the Proposed Consent Judgments. Both at the hearing and in its subsequent Conditional Approval Order, the Court indicated that the injunctive and monetary relief embodied in the Proposed Consent Judgments was "fair, adequate, reasonable, and in the public interest." CR Intrinsic, 939 F. Supp. 2d at 435.

At the same time, the Court expressed its concern over the use of the "neither admit nor deny" provisions in the Proposed Consent Judgments. Id. at 436. The Court noted that those provisions were sensible in ordinary, run-of-the-mill cases. Id. at 437. But, in the Court's view, this litigation was extraordinary for at least two reasons: first, this action involved parallel criminal charges against Martoma; second, even though CR Intrinsic had not admitted liability, it had agreed, promptly upon the SEC's filing of the Amended Complaint, to forfeit virtually all damages that the SEC had sought. Id. at 440. The Court was struck by a seeming contradiction: a declaration by sophisticated defendants claiming they committed no wrongdoing that flies in the face of their unusual and swift capitulation, and that appears at odds with their acceptance of responsibility to pay disgorgement and penalties of such staggering amounts. Id. While

5

recognizing that courts are, in general, "'bound . . . to give deference to [the SEC's] assessment of the public interest,'" see id. at 443 (alteration in original) (quoting S.E.C. v. Citigroup Global Markets, Inc., 673 F.3d 158, 168 (2d Cir. 2012)), the Court also suggested that "courts must bring to bear enhanced scrutiny in reviewing proposed consent judgments in certain extraordinary cases alleging extraordinary public and private harms, in recognition of their particular importance to the public interest," id. at 444.

However, the Court recognized that a district court's role in approving settlements containing "neither admit nor deny" provisions was unclear in light of the then-pending appeal in Citigroup IV. Id. The Court determined that the ultimate outcome of the Citigroup IV appeal "must have some bearing" on the Court's decision of whether to approve the Proposed Consent Judgments. Id. The Court thus conditioned its approval on the Second Circuit's decision in that case. Id.

Now, following the Second Circuit's recent opinion, the parties have renewed their request for the Court to approve the Proposed Consent Judgments. They suggest that Citigroup IV prohibits the Court from refusing to approve a consent judgment merely because the defendant neither

admits nor denies the allegations in the complaint.   In
light of that ruling, the parties argue, the Court's
previous finding that the Proposed Consent Judgments were
fair and reasonable necessarily requires the Court to
approve the judgments.

## II. **LEGAL STANDARD**

Citigroup IV clarified the standard that district
courts should apply in their review of consent judgments
between the SEC and a defendant:

> Today we clarify that the proper standard for
> reviewing a proposed consent judgment involving an
> enforcement agency requires that the district court
> determine whether the proposed consent decree is fair
> and reasonable, with the additional requirement that
> the public interest would not be disserved in the
> event that the consent decree includes injunctive
> relief.  Absent a substantial basis in the record for
> concluding that the proposed consent decree does not
> meet these requirements, the district court is
> required to enter the order.

Citigroup IV, 2014 WL 2486793, at *7 (citation and internal
quotation marks omitted).   Contrary to the standard
previously applied by this Court and others, the Second
Circuit declared that the adequacy of a settlement was no
longer a consideration that a district court should weigh
in analyzing a proposed consent judgment.   Id.

The Circuit Court laid out four factors that a
district court "should, at a minimum, assess" to determine
whether a proposed consent judgment is fair and reasonable:

7

> (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind.

Id. (citations omitted). While noting that some cases may require "additional inquiry,"[1] the Second Circuit held that "the primary focus of the inquiry . . . should be on ensuring the consent decree is procedurally proper" based on "objective measures" that do not "infringe on the S.E.C.'s discretionary authority to settle on a particular set of terms." Id. Similarly, when considering whether any injunctive relief would disserve the public interest, the district court "may not . . . find the public interest disserved based on its disagreement with the S.E.C.'s decisions on discretionary matters of policy, such as deciding to settle without requiring an admission of liability." Id. at *9.

The Second Circuit outlined two factors that a district court should not consider in its evaluation. First, the court may not require the SEC to prove facts to establish the truth of its allegations. Id. at *8. While the court should "establish that a factual basis exists for

---

[1] In a concurring opinion, Judge Lohier offered his view that a court should conduct "a straightforward analysis of only the four factors" listed in the majority opinion. Citigroup IV, 2014 WL 2486793, at *11 (Lohier, J., concurring) (emphasis in original).

the proposed decree," in general the parties can meet this requirement by "setting out the colorable claims, supported by factual averments by the S.E.C., neither admitted nor denied by the wrongdoer[.]" <u>Id.</u>  The district court may, however, require a more concrete factual basis for the proposed consent agreement when it suspects improper collusion between the parties.  <u>Id.</u>

Second, the district court should not base its decision on a determination of whether the SEC brought the proper charges against the defendant. <u>Id.</u> at *10.  Rather, "[t]he exclusive right to choose which charges to levy against a defendant rests with the S.E.C." <u>Id.</u>  Along similar lines, a district court cannot decline to approve a consent judgment "on the ground that it fails to provide collateral estoppel assistance to private litigants." <u>Id.</u>

### III. <u>DISCUSSION</u>

The Court is persuaded that, at this time, each of the Proposed Consent Judgments is fair and reasonable under the factors outlined in <u>Citigroup IV</u>.  The Proposed Consent Judgments are legal and clear, and they resolve the claims in the Amended Complaint.  <u>See</u> <u>Citigroup IV</u>, 2014 WL 2486793, at *7.  There is no evidence in the record to suggest that the agreements are "tainted by improper collusion or corruption of some kind." <u>Id.</u>  The Court thus

reaffirms its earlier statement that the terms of the Proposed Consent Judgments are "fair" and "reasonable." See CR Intrinsic, 939 F. Supp. 2d at 435. In light of that conclusion, the Court "is required to enter" the Proposed Consent Judgments. Citigroup IV, 2014 WL 2486793, at *7.

In making this determination, the Court is mindful of and deems it appropriate to call attention to how circumstances have changed since it issued the Conditional Approval Order. First, the criminal trial of defendant and CR Intrinsic employee Martoma, which was pending at the time of the Conditional Approval Order, see CR Intrinsic, 939 F. Supp. 2d at 440, is now complete. On February 6, 2014, a jury convicted Martoma on three counts of securities fraud grounded on charges of unlawful conduct arising out of the same transactions and events involved in the instant case. See Verdict Form, United States v. Martoma, 12-cr-973 (PGG) (S.D.N.Y.), Dkt. No. 230.

Second, after the Conditional Approval Order was issued, the Government brought and resolved related criminal and civil forfeiture proceedings against CR Intrinsic and affiliated entities, including SAC Capital. Both cases concern, in part, the same alleged unlawful conduct that is the subject of the Amended Complaint: trading stock in Elan Corporation, plc, and Wyeth based on

10

material nonpublic information. Compare Am. Compl., Dkt. No. 25, ¶ 1-7, with Indictment, United States v. S.A.C. Capital Advisors, L.P., et al., 13-cr-541 (LTS) (S.D.N.Y.), Dkt. No. 1, ¶ 31(a), and Complaint, United States v. S.A.C. Capital Advisors, L.P., et al., 13-cv-5182 (RJS) (S.D.N.Y.), Dkt. No. 1, ¶ 31(a). In a global disposition of those two cases, CR Intrinsic and its codefendants pled guilty to securities fraud and wire fraud, admitted to the forfeiture allegations, and agreed, among other conditions, to surrender $1.8 billion to the Government in fines and forfeiture. See S.E.C. v. Cioffi, 868 F. Supp. 2d 65, 74 (E.D.N.Y. 2012) (approving consent judgment in light of acquittals in related criminal case); S.E.C. v. Vitesse Semiconductor Corp., 771 F. Supp. 2d 304 (S.D.N.Y. 2011) (approving consent judgment in light of convictions in related criminal case).

In its Conditional Approval Order, the Court noted that a conviction in Martoma's case "would presumptively establish facts of wrongdoing that a settlement in this action does not expressly acknowledge -- an incongruity obvious to even the most casual observer." CR Intrinsic, 939 F. Supp. 2d at 440. The Court's concern about this incongruity contributed to its reluctance to approve the Proposed Consent Judgments at that time. See id.; id. at

11

443.  But the guilty verdict in Martoma's case and the guilty plea in CR Intrinsic's own criminal case have cast the SEC's "neither admit nor deny" settlement in this action in a different light: while presumably denying wrongdoing in a civil case, these defendants have been convicted of criminal offenses based on a prosecution for the same conduct and resting on a full factual record and application of the most rigorous evidentiary standard.

As a matter of policy, then, the delay between the SEC's filing of its Proposed Consent Judgments and the Court's decision to approve those judgments today has served a purpose.  It has called attention to the importance of more rigorous inquiry by the SEC in its application of "neither admit nor deny" provisions in settlements embodying the exceptional circumstances presented by this action, specifically those where parallel criminal cases track an SEC complaint arising from the same facts.  In such instances, there may be value in a wait-and-see approach before rushing into a settlement and hurrying to a district court to seek approval of a proposed consent decree.  Situations could arise, as might have been the case here, in which the outcome of a strong criminal case could strengthen the administrative agency's hand in achieving a settlement more favorable to the public good

and the interests of justice. Similarly, in some circumstances, a judge considering whether to enter such a proposed civil consent decree should weigh the value of holding an approval decision in abeyance pending the outcome of the parallel criminal litigation. See Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986) (noting that a district court may stay civil proceedings pending the outcome of criminal proceedings when the interests of justice so require).

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Court grants approval of the Final Judgment as to Defendant CR Intrinsic Investors, LLC; the Final Judgment as to Relief Defendant CR Intrinsic Investments, LLC; the Final Judgment as to Relief Defendant S.A.C. Capital Advisors, LLC; the Final Judgment as to Relief Defendant S.A.C. Capital Associates, LLC; the Final Judgment as to Relief Defendant S.A.C. International Equities, LLC; and the Final Judgment as to Relief Defendant S.A.C. Select Fund, LLC.

**SO ORDERED.**

Dated:   New York, New York
         17 June 2014

Victor Marrero
U.S.D.J.

14