# WOHL & FRUCHTER LLP

570 LEXINGTON AVENUE, 16TH FLOOR
NEW YORK, NY 10022

T 212 758 4000
F 212 758 4004

www.wohlfruchter.com

ETHAN D. WOHL
direct 212 758 4097
ewohl@wohlfruchter.com




August 5, 2014

**BY FEDERAL EXPRESS**

Hon. Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF) (All Actions)

Dear Judge Marrero:

We write on behalf of Plaintiffs. We submit herewith, as directed by the Court's endorsed Order dated July 21, 2014 [ECF No. 144], (1) Defendants' letter concerning Plaintiffs' proposed RICO claims, dated August 1, 2014, and (2) Plaintiffs' reply thereto, dated August 5, 2014.

Respectfully submitted,

Ethan Wohl

Ethan D. Wohl

Enclosures

cc: All Counsel of Record (via email)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by the parties.

**SO ORDERED.**

8-7-14
DATE          VICTOR MARRERO, U.S.D.J.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS  NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

DANIEL J KRAMER

TELEPHONE (212) 373-3020
FACSIMILE (212) 492-0020

E-MAIL dkramer@paulweiss com

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

August 1, 2014

**Via E-Mail**

Ethan D. Wohl, Esq.
Wohl & Fruchter LLP
570 Lexington Avenue, 16th Floor
New York, NY 10022
ewohl@wohlfruchter.com

*Kaplan* v. *S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (All Actions)

Dear Ethan:

On behalf of the SAC Defendants ("SAC"), and pursuant to Judge Marrero's Order, dated July 21, 2014, we write regarding the deficiencies in the civil RICO claims set forth in your proposed complaint, dated July 10, 2014, at paragraphs 540-629.

**Procedural Posture**

SAC has paid the SEC $602 million in connection with its trading in Elan and Wyeth. That payment includes full disgorgement of profit made or loss avoided on SAC's trades. As you have acknowledged, the claim raised in your current complaint, under § 20A of the Securities Exchange Act of 1934, is set off dollar-for-dollar by any amounts disgorged to the SEC. We have a fully briefed motion to dismiss pending before Judge Marrero, which shows that your attempt to state a claim under § 20A that is broader than the one SAC settled with the SEC fails as a matter of law. And, as we explain below, any attempt to obtain damages from SAC through a RICO claim will fail because your complaint does not, and cannot, state a claim under RICO. Finally, we note that Judge Marrero has set a briefing schedule regarding whether the SEC should establish a Fair Fund with the monies SAC has paid to the SEC. Your clients' recovery, if any, in this matter, should be sought from the Fair Fund, if the SEC decides to create such a fund.

**The Draft RICO Claim**

RICO claims are very difficult to sustain, leading many plaintiffs to spend substantial resources pursing claims that fail in the end. As Judge Marrero recently explained: "RICO's enchantment, like the siren's song, . . . draw[s] another crew of spellbound plaintiffs foundering against the rocks." *Gross* v. *Waywell*, 628 F. Supp. 2d 475, 479

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Ethan D. Wohl, Esq.

(S.D.N.Y. 2009). This is because the RICO statute contains "formidable intricacies and pitfalls," *id.*, which leads plaintiffs' attorneys to "overreach[] well beyond the bounds of the law's reasonable construction." *Id.* at 480. "RICO simply was not designed by Congress to encompass many of the creative, and even extraordinary, if not outrageous uses for which plaintiffs have labored the statute." *Id.* at 480-81 (quotations omitted). *See also Zito v. Leasecomm Corp.*, 02 Civ. 8074, 2003 WL 22251352, at *5 (S.D.N.Y. Sept. 30, 2003) ("RICO is a complex statute, . . . render[ing] it difficult for plaintiffs to plead the elements of a cause of action with clarity and concision.").

Your draft RICO claims are no different. They fail for the reasons set forth below.

**Plaintiffs Lack RICO Standing.** Civil RICO standing imposes a significantly higher burden than Article III standing. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir. 2004). Civil RICO plaintiffs must show that they have been "injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). And, plaintiffs must allege an "injury" that occurred "by reason of" a RICO violation. Your clients cannot satisfy either requirement as Courts, Congress and the U.S. Attorney have all rejected the notion that contemporaneous traders suffer direct and proximate injury from insider trading.

*Injury.* A civil RICO plaintiff must have suffered an injury to business or property that is "concrete and actual." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227-28 (2d Cir. 2008); *see also Sedima v. Imrex Co. Inc.*, 473 U.S. 479, 497 (1985). Every Circuit that has dealt with the issue has found that it may not be "speculative and amorphous." *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006) (citations and quotations omitted), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *see also Makowski v. United Bd. of Carpenters & Joiners of Am.*, 2010 WL 3026510, at *8, *15 (S.D.N.Y. Aug. 2, 2010) (applying *Evans*). Plaintiffs cannot meet that burden.

Plaintiffs allege they are open market traders in Elan and Wyeth stock who traded around the same time, and in the opposite direction, as SAC. They do not, and cannot, contend that they were induced to trade by SAC or that they were injured by SAC's conduct. As the Sixth Circuit has explained, "defendants' [insider trading] conduct caused no injury to [contemporaneous traders]. . . . Defendants' trading did not alter plaintiffs' expectations when they sold their stock, and in no way influenced plaintiffs' trading decision[s]." *Fridrich v. Bradford*, 542 F.2d 307, 319 (6th Cir. 1976).

In fact, Preet Bharara, the United States Attorney for the Southern District of New York, advised the Court in SAC's related criminal case that contemporaneous traders—the persons you represent—are not victims of SAC's conduct. As Mr. Bharara wrote:

> [T]here is no evidence that individuals in the putative class would not have engaged in the transactions claimed to have resulted in losses in the absence of trading by the SAC Defendants . . . . [They are not injured] merely because [they were] denied the opportunity to make the same

2

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Ethan D. Wohl, Esq.

> illegal profits obtained by the defendant . . . . [Accordingly,] investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those that do.

Ltr. from P. Bharara to Hon. L. Swain at 1-3 *U.S.* v. *S.A.C. Capital Advisors, L.P.*, ECF No. 17, 13-cr-541 (S.D.N.Y.) (Nov. 8, 2013) (attached hereto as Exhibit A).

Judge Rakoff made the same point in *United States* v. *Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012). He wrote: "While insider trading may work a huge unfairness on innocent investors, Congress has never treated it as a fraud on investors, the Securities Exchange Commission has explicitly opposed any such legislation, and the Supreme Court has rejected any attempt to extend coverage of the securities fraud laws on such a theory."

To be clear, we do not dispute that market participants are "entitled to an honest market," *Elkind* v. *Liggett & Myers, Inc.*, 635 F.2d 156, 169 (2d Cir. 1980), but any harm to the "honest market" is not direct harm to those traders. It is exactly the kind of "speculative and amorphous" injury that is not "concrete" enough or "quantifiable" to be recognizable under civil RICO. If plaintiffs lost any money on their investments in Elan and Wyeth (and not all putative class members did), it was because they made a bad investment decision and the price of the stock moved against them. It is not due to the presence of an insider trader in the marketplace. If anything, SAC's trading opposite to plaintiffs made plaintiffs' purchases or sales less expensive then they otherwise would have been. Accordingly, plaintiffs—who were contemporaneous traders—were not "injured" by SAC's trading.

Recognizing all of this, Congress did not provide contemporaneous traders with a cause of action for damages. Instead, it passed § 20A, which is expressly limited to *disgorgement* of an insider trader's ill-gotten gains. Moreover, § 20A does not recognize that contemporaneous traders are actually "injured" by insider trading. To the contrary, Congress and the courts have been careful to deny contemporaneous traders any out-of-pocket losses. As the Second Circuit has explained, general market participants suffer no losses that are "directly traceable to the [insider trading] . . . . No such fraud or inducement may be attributed to [an insider trader] trading on an impersonal market." *Id.* at 170.

Plaintiffs' lack of injury is confirmed by the relief they seek in their draft civil RICO allegations. While the civil RICO statute provides that a person injured by reason of a RICO violation can recover "threefold the *damages he sustains*," 18 U.S.C. § 1964(c) (emphasis added), plaintiffs' draft civil RICO allegations do not seek threefold their "damages . . . sustain[ed]," but rather threefold SAC's profits and losses avoided. *See* Compl. ¶¶ 30; 628-29. That plaintiffs are seeking treble SAC's profits and losses avoided—not treble "damages"—underscores that they have sustained no damages from any alleged insider trading. And the civil RICO statute does not permit plaintiffs to bring claims for disgorgement or unjust enrichment. *See U.S.* v. *Philip Morris USA*, 396 F.3d

3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Ethan D. Wohl, Esq.

1190, 1200 (D.C. Cir. 2005); *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 161 (E.D.N.Y. 2008) ("Unjust enrichment is not available under civil RICO.") *rev'd on other grounds*, 620 F.3d 121 (2d Cir. 2010).

***Causation.*** The Supreme Court has interpreted the civil RICO statute to require that a defendant's conduct not only be the "but-for" cause of plaintiff's injury, but also the "proximate cause." *Holmes v. Sec. Invest. Protect. Corp.*, 503 U.S. 258, 268 (1992); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006). To satisfy civil RICO's "proximate cause" requirement, a plaintiff must allege and prove a "direct" causal connection between the defendant's conduct and the plaintiff's injury. *Anza*, 547 U.S. at 461 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries.") (emphasis added); *Holmes*, 503 U.S. at 271-72 ("the general tendency of the law . . . is not to go beyond the first step.").

The Supreme Court provided three rationales for this "direct" causation requirement: (1) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the [RICO] violation, as distinct from other, independent, factors," (2) allowing recovery by indirectly injured plaintiffs "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury . . . to obviate the risk of multiple recoveries," and (3) "directly injured victims can generally be counted on to vindicate the law," rendering unnecessary recognition of a cause of action on the part of those only indirectly injured. *Id.* at 270. As the Supreme Court concluded, "[a]llowing [RICO] suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits." *Id.* at 274 (citations omitted).

Thus, the Supreme Court has repeatedly held that civil RICO claims must be rejected where the causal chain between defendant's conduct and the alleged injury was not "direct." First, in *Holmes*, the Supreme Court held that the Securities Investor Protection Corporation ("SIPC") could not recover against an alleged stock manipulator whose manipulation "caused [two] broker-dealers' financial difficulties resulting in their eventual liquidation and SIPC's advance of nearly $13 million to cover their customers' claims." *Id.* at 263. The Court concluded that SIPC's RICO claims could not satisfy the "directness" requirement because "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." *Id.* at 271.

Second, in *Anza*, the Supreme Court rejected RICO claims brought by a steel company that alleged that its competitor was filing fraudulent New York State tax returns in an effort to lower prices. 547 U.S. at 457-58. The Supreme Court concluded that, even if the allegations were true, there was no "direct" injury because the competitor could have used the defrauded tax moneys for other purposes than lowering its prices, and plaintiff's

4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Ethan D. Wohl, Esq.

lost sales "could have resulted from factors other than [the] alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendant's] decreased prices." *Id.* at 459.

Third, and most recently, in *Hemi Group, LLC* v. *City of New York*, 559 U.S. 1 (2010), the Court rejected RICO claims brought by the City of New York against out-of-state cigarette companies that failed to file customer information as required by state law, which would have allowed the City to go after customers for unpaid taxes. The Supreme Court held that there were too many links in the causal chain between the alleged RICO violation and the injury suffered by New York City—"taxpayers here only caused harm to the City in the first place if they decided not to pay taxes they were legally obligated to pay. Put simply, Hemi's obligation was to file [] reports with the State, not the City, and the City's harm was directly caused by the customers, not Hemi." *Id.* at 3.

Likewise here, plaintiffs suffered no "direct" injury from SAC's alleged conduct. SAC did not induce contemporaneous traders to trade. If contemporaneous traders lost money in the market generally, such losses were not directly caused by the presence of insider traders. *See Fridrich*, 542 F.2d at 318 ("Defendants' trading did not alter plaintiffs' expectations when they sold their stock, and in no way influenced plaintiffs' trading decision[s].") Any losses that plaintiffs suffered on their investments were caused by other, intervening forces—most notably the disappointing results of the clinical trial for bapineuzumab. Just like the plaintiff's injury in *Anza*, which "would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendant's] decreased prices," so too here it would be complex and completely impracticable to determine what losses—if any—arose "directly" because of SAC's insider trading. *See Hemi*, 559 U.S. at 10 ("Because the City's theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement.").

In short, plaintiffs were not injured by SAC's conduct. And, even if plaintiffs could cobble together a theory of injury, it would be so indirect and speculative as to be uncompensable under the RICO statute.

**Plaintiffs Fail To Allege An "Enterprise."** Section 1962(c) also requires plaintiffs to prove the existence of a RICO "enterprise," which is defined in 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Under the plain meaning of § 1961(4), "associated in fact" enterprises cannot be comprised exclusively of partnerships or corporations because those entities are listed in the first clause of § 1961(4)—which extends to any individual, partnership, corporation, association or other legal entity—but not the second clause—which is limited to "union[s]" or "group[s] of individuals associated in fact." Here, plaintiffs allege an "associated in fact" enterprise

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Ethan D. Wohl, Esq.

comprised exclusively of corporate entities, which fails to meet the requirements of § 1961(4). *But see U.S.* v. *Huber*, 603 F.2d 387, 394 (2d Cir. 1979).

**Plaintiffs Fail To Allege A "Pattern" of Racketeering**. Section 1962(c) also requires plaintiffs to allege and prove that the RICO predicate acts form the requisite "continuity," and exhibit the "horizontal" and "vertical" relatedness necessary to form a "pattern of racketeering." To prove continuity, plaintiffs must prove that the RICO predicate acts were not isolated or sporadic, but continued over substantial periods of time. *See, e.g., GICC Capital Corp.* v. *Tech. Fin. Grp. Inc.*, 67 F.3d 463, 467-68 (2d Cir. 1995). Predicate acts are related to each other, or "horizontally related," where they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J Inc.* v. *Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Predicate acts are related to the enterprise, or "vertically related," when either (1) the defendant was able "to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise"; or (2) the "predicate offenses are related to the activities of that enterprise." *U.S.* v. *Scotto*, 641 F.2d 47, 54 (2d Cir. 1980). Here, plaintiffs allege at most that separate individuals—almost all of whom were unknown to each other; who worked in different offices at different time periods; and who took steps to conceal their actions from SAC's compliance function—engaged in entirely unrelated acts of insider trading. *See* Compl. ¶¶ 565-67; 575-77; 582-84.

**The SAC Management Companies Are Not Vicariously Liable Under RICO**.
Following the "basic principle that RICO is intended to protect and not victimize organizations," courts in this district have held that corporations may not be liable for the actions of their employees in violation of RICO unless the corporation itself was an "active perpetrator of the fraud or a central figure in the criminal scheme." *USA Certified Merch., LLC* v. *Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003) (Marrero, J.) (quotations omitted). Here, while four SAC entities have pleaded guilty to criminal violations, those pleas were based entirely on common law principles of *respondeat superior* that do not apply in the RICO context. *See* Compl. ¶¶ 565-67; 575-77; 582-84. Plaintiffs cannot allege or prove that the SAC Management Companies were "active perpetator[s]" or "central figure[s]" in a criminal scheme.

\* \* \* \* \*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Ethan D. Wohl, Esq.

For all of these reasons, plaintiffs' draft RICO claims are defective and do not state a claim. Moreover, SAC's analysis is ongoing, and it reserves all rights to raise additional defenses in the future.

Sincerely,

*Daniel J Kramer /KCF*

Daniel J. Kramer

cc: All counsel

# Exhibit A

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2013

The Honorable Laura T. Swain
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007

Re:   United States v. S.A.C. Capital Advisors, L.P., et al., 13 Cr. 541 (LTS)

Dear Judge Swain:

The Government writes in response to the motion filed yesterday afternoon by counsel for a purported class of investors in Elan and Wyeth securities ("Class Counsel") in an uncertified consolidated class action lawsuit pending in *Kaplan v. S.A.C. Capital Advisors, L.P.* 12 Civ. 9350 (VM). For the reasons described below, the Government believes that the movants lack standing under the Crime Victims' Rights Act ("CVRA") and therefore have no "right to be reasonably heard" at the plea proceeding. 18 U.S.C. § 3771(a)(4). Among other things, Class Counsel cannot establish that the investors they purport to represent were "directly and proximately harmed" by the charged offenses here. For example, there is no evidence that individuals in the putative class would not have engaged in the transactions claimed to have resulted in losses in the absence of trading by the SAC Defendants. The Government nevertheless will not object to Class Counsel being heard at the plea proceeding if the Court believes it would be useful or otherwise appropriate.

The CVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of" the offense in question. 18 U.S.C. § 3771(e); *see generally In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009).[1] To be sure, insider trading seriously undermines the integrity and proper functioning of the securities markets, and in that sense, generally victimizes investors and other market participants. As a legal matter, however, an individual who happens to buy or sell securities at the same time as an insider trading defendant is not considered a "victim" under the CVRA merely because that individual was denied the opportunity to make the same illegal profits obtained by the defendant. As Judge Rakoff explained in *United States v. Gupta*:

---

[1]  The standard is identical under the Mandatory Victims Restitution Act ("MVRA"), which the Class Plaintiffs have not invoked. *See* 18 U.S.C. § 3663A(a)(2).

Case 1:12-cv-08466-VM   Document 69   Filed 08/08/14   Page 11 of 18
Case 1:13-cr-00541-LTS   Document 17   Filed 11/08/13   Page 2 of 3

The Honorable Laura T. Swain
November 8, 2013
Page 2

> While insider trading may work a huge unfairness on innocent investors, Congress has never treated it as a fraud on investors, the Securities Exchange Commission has explicitly opposed any such legislation, and the Supreme Court has rejected any attempt to extend coverage of the securities fraud laws on such a theory. *See, e.g., Chiarella v. United States,* 445 U.S. 222, 232–235, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). Prosecution of insider trading therefore proceeds, as in this case, on one or more theories of defrauding the institution (or its shareholders) that owned the information. *See, e.g., Dirks v. SEC,* 463 U.S. 646, 660–64, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *Carpenter v. U.S.,* 484 U.S. 19, 25–27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

*United States* v. *Gupta*, 904 F. Supp.2d 349, 352 (S.D.N.Y. Oct. 24, 2012).

As recognized by the Court in *Gupta*, the Supreme Court's holding in *Chiarella* makes clear that particular investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those that do. In *Chiarella*, the Supreme Court vacated a conviction of a printer-company employee who bought stock in target companies on the grounds that the district court improperly "instructed the jury that the [employee] owed a duty to everyone; to all sellers, indeed, to the market as a whole." 445 U.S. at 231. The Supreme Court reasoned "[n]o duty could arise from [the employee's] relationship with the sellers of the target company's securities, for [the employee] had no prior dealings with them. He was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence. He was, in fact, a complete stranger who dealt with the sellers only through impersonal market transactions." *Id.* at 232-233.

As noted above, the CVRA requires that a putative victim demonstrate "direct[] and proximate[] harm" as a result of the offense conduct. 18 U.S.C. § 3771(e). Any proximate and direct harm to the purchasers of Elan and Wyeth securities that Class Counsel seeks to represent resulted from the negative drug trial results announced in July 2009 that caused the price of the securities to fall. There is no evidence that investors buying shares of Elan and Wyeth in advance of the drug trial announcement would have avoided their losses "but for" the insider trading by other market participants, as is required under the CVRA. The direct and proximate cause of the Class Plaintiffs' losses was the negative news announced on July 29, 2009, irrespective of whether others violated the law.[2]

---

[2] Consistent with this principle, the very few cases in which restitution has been awarded to specific investors in insider trading actions are those in which the defendants engaged in deceptive conduct to encourage specific victim investors to purchase the securities in question. *See United States v. Skowron,* 839 F.Supp.2d 740 (S.D.N.Y. Mar. 20, 2012), *aff'd* 2013 WL 3593780 (2d Cir. July 16, 2013) (ordering restitution to broker-dealer and four of its clients, on consent of the Government and defendant, where insider trading defendant expressly requested broker-dealer to buy shares for itself and its clients that the defendant was attempting to sell based on inside information); *United States v. Kline,* 199 F.Supp. 2d 922 (D. Minn. Apr. 4, 2002) (awarding restitution to investor in thinly-traded stock where insider trading defendant encouraged victim to sell the shares to the defendant based on inside information known only to

The Honorable Laura T. Swain
November 8, 2013
Page 3

Although the members of the purported class represented by Class Counsel do not qualify as "victims" under the CVRA, they of course remain free to pursue any relief to which they are lawfully entitled in other proceedings, including in the *Kaplan* action, which asserts various claims against SAC Capital Advisors, L.P. relating to Elan and Wyeth. To the extent those claims have merit, Class Counsel can continue to pursue them and nothing in the proposed plea agreement in any way prejudices their ability to do so.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                          By: _____
                              Arlo Devlin-Brown
                              Antonia M. Apps
                              John T. Zach
                              Assistant United States Attorneys

cc: Daniel J. Kramer, Esq.
    *(Counsel for the Defendants)*

    Ethan D. Wohl, Esq
    Deborah Clark-Weintraub, Esq.
    Gregg S. Levin, Esq.
    Marc I. Gross, Esq.
    *(Counsel for Plaintiffs in Kaplan v. S.A.C. Capital Advisors, L.P.)*

---

defendant). Here, there is no allegation that any person at SAC Capital with inside information induced members of the purported class represented by Class Counsel to purchase shares of Elan and Wyeth that they otherwise would not have. Indeed, we are unaware of any allegation that any members of the purported class represented by Class Counsel or the named plaintiffs identified in the instant motion were counterparties of SAC Capital, as opposed to merely contemporaneous traders in Elan and Wyeth shares.

# WOHL & FRUCHTER LLP

570 LEXINGTON AVENUE, 16TH FLOOR
NEW YORK, NY 10022

T 212 758 4000
F 212 758 4004

www.wohlfruchter.com

ETHAN D. WOHL
direct 212 758 4097
ewohl@wohlfruchter.com

August 5, 2014

**BY EMAIL**

Daniel J. Kramer, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re: *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF) (All Actions)

Dear Dan:

This constitutes Plaintiffs' reply regarding RICO, as directed by the Court, to your letter on behalf of the SAC Defendants dated August 1, 2014 (the "SAC Letter").

Response to Introductory Observations. The reach of RICO is circumscribed, as the SAC Letter argues (at 1-2). However, the conduct at issue in the present case – undermining the integrity of trading on national securities exchanges by systematically inducing disloyal and illegal conduct by public company employees and consultants – implicates exactly the "harm to significant public processes or institutions" and "threats to larger societal interests" that have been recognized as "worthy of the severe punitive and deterrent purposes embodied in the [RICO] statute." *Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009). In addition, these are matters of particular federal concern, as reflected by the exclusive federal jurisdiction over such claims, Exchange Act § 27, further supporting the use of RICO here. *Gross*, 628 F. Supp. 2d at 482.

As the SAC Letter observes (at 2), RICO is complex, but the complexity arises from statutory elements that the SAC Letter contests only in passing (at 5-6), or not at all. The SAC Letter instead focuses principally (at 2-5) on restating the SAC Defendants' challenges to causation and damages for the underlying predicate acts of insider trading. As shown below and in Plaintiffs' opposition to the SAC Defendants' motion to dismiss, however, these arguments misconstrue the basic rationale for recognizing insider trading as fraud and ignore the relevant Supreme Court and Second Circuit decisions. They also ignore the series of decisions by Judge Keenan in *In re Motel 6 Securities Litigation*, Nos. 93 Civ. 2183 (JFK) and 93 Civ. 2866 (JFK), which upheld RICO claims based on another insider trading scheme.

Response Regarding Standing, Injury and Causation. The injury suffered by Plaintiffs from the SAC Defendants' insider trading flows directly from the SAC Defendants' breach of the *duty to disclose* that attached when they traded on inside information. The SAC Letter's fundamental

Daniel J. Kramer, Esq.
August 5, 2014
Page 2

**WOHL & FRUCHTER** LLP

flaw is that it focuses on the causal connection with, and injury from, the *act of trading*, as opposed to the actual gravamen of Plaintiffs' Section 10(b) and RICO claims – the *breach of the duty to disclose* the inside information in the SAC Defendants' possession.

Under the "classical" disclose-or-abstain theory of insider trading, as adopted and articulated by the Supreme Court in *Chiarella v. United States*, 445 U.S. 222 (1980), insider trading constitutes fraud and violates Section 10(b) because insiders and, by extension, tippees like the SAC Defendants, are deemed to owe a fiduciary duty *to stockholders* to disclose all material information prior to trading. By trading without disclosure, the insider or tippee commits an actionable omission and contemporaneous traders are harmed, as with any fraudulent misstatement or omission, by paying too much for shares they buy or receiving too little for shares they sell.

As stated in *Chiarella*, "the relationship between a corporate insider and *the stockholders of his corporation* gives rise to a disclosure obligation," 445 U.S. at 227 (emphasis added). *See also United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (adopting the alternative "misappropriation" theory of insider trading and explaining that "[t]he classical theory targets a corporate insider's breach of duty *to shareholders with whom the insider transacts*") (emphasis added).

In turn, when a tippee obtains inside information with knowledge it was provided by the insider in exchange for a personal benefit, "the tippee inherits the duty to disclose or abstain." *Dirks v. SEC*, 463 U.S. 646, 664 (1983).

This analysis was set forth by the Second Circuit more than forty years ago in *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974), where the Court recognized a private right of action for insider trading under Section 10(b) for a class of open-market traders and rejected the arguments the SAC Letter now makes. In *Shapiro*, the defendants argued that "since defendants' sales were unrelated to plaintiffs' purchases and all transactions took place on anonymous public stock exchanges, there is lacking the requisite connection between defendants' alleged violations and the alleged losses sustained by plaintiffs." 495 F.2d at 238. The Second Circuit flatly rejected this contention, holding that the presumption of reliance in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), "surely warrants our conclusion that the requisite element of causation in fact has been established by the admitted withholding by defendants of material inside information which they were under an obligation to disclose," 495 F.2d at 240. The Court then summarized: "defendants were under a duty to the investing public, including plaintiffs, not to trade in or to recommend trading in Douglas stock without publicly disclosing the revised earnings information which was in their possession. They breached that duty. Causation in fact therefore has been established." *Id.*

In *Chiarella*, the Supreme Court likewise relied on both *Affiliated Ute* and *Shapiro* in holding insider trading to constitute fraud under Section 10(b). 445 U.S. at 229-30 & n.12.

Daniel J. Kramer, Esq.
August 5, 2014
Page 3

**WOHL & FRUCHTER** LLP

In the leading case addressing RICO claims based on insider trading, *In re Motel 6 Securities Litigation*, Judge Keenan reached the same result. First, in a 1997 decision, No. 93 Civ. 2183 (JFK), 1997 WL 154011, at *3 (S.D.N.Y. Apr. 2, 1997), he rejected the argument that "proximate cause" under RICO required a showing beyond what was required for the underlying insider trading claims under Section 10(b). Second, in a 2001 decision, 161 F. Supp. 2d 227 (S.D.N.Y. 2001), Judge Keenan again rejected arguments based on causation, citing *Affiliated Ute* and explaining that for omission cases under Section 10(b), "[i]f materiality is established, reliance is presumed," 161 F. Supp. 2d at 244. On this basis, he also rejected the defendants' challenges to causation under RICO. *Id.* at 246.

Thus, whether assessed under RICO or Section 10(b), the causation and injury from insider trading flows directly from the insider trader's breach of the duty to disclose and is no different from the causation and injury from any other breach of a duty to disclose, whether arising because "disclosure is necessary to make prior statements not misleading," *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993), or from an affirmative disclosure obligation imposed by statute or regulation, *Thesling v. Bioenvision, Inc.*, 374 F. App'x 141, 143 (2d Cir. 2010), or from a relationship of trust and confidence created by other circumstances. *E.g.*, *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 193 (2d Cir. 1998) (broker-dealer owed duty to disclose excessive markups on municipal bonds); *Affiliated Ute*, 406 U.S. at 153 (market makers who induced sales owed affirmative disclosure duty to sellers).

Here, Dr. Gilman, through his position as chair of the bapi Safety Monitoring Committee, was a (temporary) insider who accordingly owed a duty of disclosure to Plaintiffs. *See Dirks*, 463 U.S. at 655 n.14 (holding that "where corporate information is revealed legitimately to an underwriter, accountant, lawyer, or consultant working for the corporation, these outsiders may become fiduciaries of the shareholders"); Robert A. Prentice, *Clinical Trial Results, Physicians, and Insider Trading*, 20 J. LEGAL MED. 195, 205 (1999) (physicians who act as "consultants to clinical drug trials typically will be temporary insiders because they are shown the results of the trial for a business purpose and certainly with an expectation of confidentiality").

The SAC Defendants, in turn, by obtaining illegal tips from Dr. Gilman in exchange for cash, "inherited" his duty to disclose or abstain from trading. By trading without disclosure of the inside information, the SAC Defendants breached the duty of disclosure they owed to Plaintiffs. Had the SAC Defendants fulfilled their duty of disclosure, Plaintiffs "would not have paid as high a price or made the purchase at all," *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172 (2d Cir. 1980).

To support its injury and causation arguments, the SAC Letter (at 2, 5) cites *Fridrich v. Bradford*, 542 F.2d 307 (6th Cir. 1976). The SAC Letter fails to acknowledge, however, that *Fridrich* was rejected by the Second Circuit, *see Elkind*, 635 F.2d at 168 n.23, and later by Congress when it enacted Exchange Act Section 20A, as the statute's legislative history explains. *Insider Trading: Hearing Before the H. Subcomm. on Telecomms. and Fin.*, 100th Cong. (1988), *available at* 1988 WL 1096435, at *24 n.25. Simply put, *Fridrich* is not the law, and the SAC Letter's reliance on a decision at odds with controlling Second Circuit authority and Congress'

Daniel J. Kramer, Esq.
August 5, 2014
Page 4

**WOHL & FRUCHTER** LLP

later legislative pronouncement underscores the erroneous nature of the SAC Defendants' reasoning.

The SAC Letter (at 2-3) also relies on the USAO's November 8, 2013 letter to Judge Swain in SAC's criminal case. In that letter, the USAO argued (at 2) that under the Crime Victims' Rights Act, "particular investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those that do." In support, the USAO cited *Chiarella* and Judge Rakoff's decision in *United States v. Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012). The USAO's letter – drafted hastily to respond to Plaintiffs' motion the previous day – fundamentally miscited both opinions.

As discussed above, *Chiarella* held that insider trading is actionable as fraud when the insider or tipper owes a fiduciary duty to the stockholders of the company whose securities are traded. Correspondingly, *Chiarella* held that in the absence of such a fiduciary duty, there can be no liability. Thus, an outsider like the financial printer in *Chiarella* is not liable to stockholders under the disclose or abstain rule because, as the Supreme Court explained, "[h]e was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence." 445 U.S. at 232-33.

*Gupta* makes the same point, though in language susceptible to misinterpretation, citing *Chiarella* and explaining that Congress, the SEC and the Supreme Court have "never treated [insider trading] as a fraud on investors" but instead have proceeded "on one or more theories of defrauding the institution (*or its shareholders*) that owned the information." 904 F. Supp. 2d at 352 (emphasis added). The SAC Letter selectively omits the latter statement.

The USAO's error was thus to view the SAC Defendants as in the same position as the financial printer in *Chiarella* – strangers to Plaintiffs who owed them no duty. They were not. Rather, the SAC Defendants were the tippees of a (temporary) insider, Dr. Gilman, and thus assumed the duty he owed to Plaintiffs to disclose or abstain from trading. *Dirks*, 463 U.S. at 662-64.

The SAC Letter states (at 3) that "Congress did not provide contemporaneous traders with a cause of action for damages" when it enacted Section 20A and that "§ 20A does not recognize that contemporaneous traders are actually 'injured' by insider trading." This statement flatly miscites the statute. Section 20A expressly does provide a cause of action for damages, stating in paragraph (b)(1) that "[t]he total amount of *damages* imposed under subsection (a) *shall not exceed* the profit gained or loss avoided" and in paragraph (b)(2) that "[t]he total amount of *damages* imposed against any person under subsection (a)" shall be reduced by payments to the SEC. (Emphases added.) Section 20A thus adopts *Elkind*'s damages measure and, as the SAC Defendants have previously acknowledged, ECF No. 130, at 1, imposes a *cap* on the full amount of damages otherwise payable, namely, the difference between the price at which the plaintiff buys or sells and the price a "reasonable time" after public disclosure of the tip. 635 F.2d at 172.

Finally, the SAC Letter (at 4-5) cites Supreme Court decisions addressing "indirect injury" under RICO (*Holmes, Anza*, and *Hemi Group*) and argues that those cases should bar recovery by

Plaintiffs. But as the cases discussed above show, Plaintiffs' injury follows proximately and directly from the SAC Defendants' breach: having proceeded to trade, the SAC Defendants owed to Plaintiffs a duty to disclose the inside information they possessed. Plaintiffs' losses, in turn, are attributable to the specific information concerning the bapi clinical trial that the SAC Defendants wrongfully withheld. The indirect injury cases cited in the SAC Letter are thus wholly inapposite.

Response Regarding the Disgorgement Cap on Damages. The SAC Letter (at 3-4) asserts that Plaintiffs' calculation of RICO damages as subject to the *Elkind*/Section 20A disgorgement cap is not permitted because RICO does not allow claims for disgorgement or unjust enrichment. However, the existence of a damages *cap* does not convert the damages thereby capped into something other than compensatory damages.

We recognize there is support in *Motel 6* for concluding that RICO requires Defendants to pay full, uncapped damages, 161 F. Supp. 2d 235. There is also precedent, however, for applying the predicate act damages measure. *See* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 191 (3d ed. 2010). For the same reasons that *Elkind* and Section 20A imposed the disgorgement cap, Plaintiffs concluded that a cap for RICO damages here was warranted. If the SAC Defendants disagree and believe that RICO does not permit any cap on damages, Plaintiffs obviously would not object. In any event, the issue of damages need not be decided at the present stage. *See Motel 6*, 161 F. Supp. 2d at 245 (deferring damages issue raised on summary judgment as premature).

Response Regarding the "Enterprise" Element. As the SAC Letter itself acknowledges (at 6), its argument that "'associated in fact' enterprises cannot be comprised exclusively of partnerships or corporations" was rejected by the Second Circuit in *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979). That position has also been rejected by "all [other] circuits that have examined the issue." Joseph, *supra*, at 98.

Response Regarding the "Pattern" of Racketeering Element. The SAC Letter (at 6) challenges the relatedness of the predicate acts of insider trading. As set forth in the proposed July 10 complaint (¶¶ 575, 616), however, the predicate acts were part of a common scheme, shared a common purpose, employed common methods, involved similar participants, injured similar victims, and were conducted through the same enterprises. These allegations are sufficient to plead both horizontal and vertical relatedness. *See United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006). The involvement of "separate individuals" in various of the predicate acts does not vitiate the existence of a pattern. *See Daidone*, 471 F.3d at 374-75 (rejecting argument that the three predicate acts "were committed years apart, by different people and for entirely different reasons," and therefore could not establish a pattern of racketeering activity). In addition, in this Circuit predicate acts can be sufficiently horizontally related if "each predicate act is related to the RICO enterprise." *Id.* at 375 (citing *United States v. Polanco*, 145 F.3d 536, 541 (2d Cir. 1998)).

Daniel J. Kramer, Esq.
August 5, 2014
Page 6

**WOHL & FRUCHTER** LLP

<u>Response Regarding the SAC Management Companies' Vicarious Liability</u>. The SAC Letter asserts that the SAC Management Companies were not "'active perpetrator[s]' or 'central figure[s]' in a criminal scheme," as required to impose liability on them for their employees' acts under RICO. SAC Letter at 6 (quoting *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003)). As set forth at length in the proposed July 10 complaint (¶¶ 339-506, 608-11), however, the acts were performed in the individuals' capacity as SAC employees and to benefit SAC, SAC's institutional practices enabled and encouraged the predicate acts, and the direct involvement by SAC's owner, Steven Cohen, in several of the predicate acts, including the insider trading in Elan and Wyeth, further warrants deeming the SAC management companies "active perpetrators" and "central figures" in the scheme.

Sincerely yours,

*/s/ Ethan Wohl*

Ethan D. Wohl

cc: All Counsel of Record