UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | : | |
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | 12 Civ. 8466 (VM) |
| | : | |
| CR INTRINSIC INVESTORS, LLC, | : | |
| MATHEW MARTOMA, | : | |
|  and | : | |
| DR. SIDNEY GILMAN, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| CR INTRINSIC INVESTMENTS, LLC, | : | |
| S.A.C. CAPITAL ADVISORS, LLC, | : | |
| S.A.C. CAPITAL ASSOCIATES, LLC, | : | |
| S.A.C. INTERNATIONAL EQUITIES, LLC, | : | |
|  and | : | |
| S.A.C. SELECT FUND, LLC, | : | |
| | : | |
| Relief Defendants. | : | |
| _____ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
ESTABLISH A FAIR FUND FOR INVESTOR VICTIMS AND APPOINT A TAX
ADMINISTRATOR**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................ 1

I.      Background ............................................................................................................... 3

II.     The Court Should Establish A Fair Fund ................................................................. 6

        A.      Contemporaneous Traders Were Harmed By The Illicit Trading .............. 7

        B.      A Fair Fund Is Appropriate In The Circumstances Of This Case .............. 9

        C.      The Potential Administrative Expenses – All Of Which Are Subject
                To Court Approval – Do Not Outweigh Establishing A Fair Fund
                For Injured Investors ................................................................................. 9

III.    The Court Should Appoint Damasco As The Tax Administrator For The
        Fair Fund ................................................................................................................. 10

IV.     Conclusion .............................................................................................................. 13

## TABLE OF AUTHORITIES

### STATUTES

Internal Revenue Code [26 U.S.C. §§1.468B-1-1.468B-5] ................................................. 11

Sarbanes-Oxley Act of 2002 [15 U.S.C. §7201 *et seq.*]..................................... 1, 2, 6-7, 10

Securities Act of 1933 [15 U.S.C. §77a *et seq.*] ................................................... 3

Securities Exchange Act of 1934 [15 U.S.C. §78a *et seq.*]................................ 2, 3, 8, 9-10

### FEDERAL CASES

*Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980) ............................................ 7

*Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir. 1983) ............................................ 9

*In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133 (S.D.N.Y. 1999) ................... 7

*SEC v. CR Intrinsic Investors, LLC*, 939 F. Supp. 2d 431 (S.D.N.Y. 2013) ...................... 5

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F. 2d 228 (2d Cir. 1974). 7, 8

*Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir. 1981) ...................... 7

### OTHER AUTHORITY

H.R. REP. 100-910, 1988 WL 169923 (Sept. 9, 1988)...................................................8-9

Plaintiff, the United States Securities and Exchange Commission ("SEC" or the "Commission"), respectfully submits this memorandum of law in support of its motion for an Order to (i) establish a Fair Fund for investor victims pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Act"), as amended by the Dodd-Frank Act of 2010 ("Dodd-Frank Act") [15 U.S.C. §7246] and (ii) appoint Damasco & Associates, LLP ("Damasco") as Tax Administrator in this matter.

**Introduction**

In June 2014, this Court approved the Commission's settlement of insider trading claims against defendant CR Intrinsic Investors, LLC ("CR Intrinsic") and its affiliates and relief defendants CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, and S.A.C. Select Fund, LLC (collectively with CR Intrinsic, the "Defendants"). Defendants agreed collectively to pay $601,747,463.22 in disgorgement, prejudgment interest, and civil penalties to resolve the Commission's claims, and in August Defendants paid the settlement amount into an interest bearing account with the Court Registry Investment System (the "CRIS account"), where it remains.

The Commission now requests that the Court establish a Fair Fund for the funds paid in the settlement to be used to compensate those investors harmed in connection with Defendants' insider trading. Congress and court decisions have agreed that certain contemporaneous investors may be considered victims of insider trading. Where, as is the case here, the size of the fund and the circumstances of the trading make the identification of harmed investors feasible, we believe it is appropriate to create a Fair Fund for investor victims.

First, under the weight of authority in the Second Circuit, certain contemporaneous traders are considered to be victims of insider trading. Indeed, as detailed below, Congress

codified a private right of action for persons who trade contemporaneously with, and on the other side of the market from, insider traders when it adopted Section 20A of the Securities Exchange Act of 1934 ("Exchange Act").  This provision provides that insider traders shall be liable for damages to such contemporaneous traders and establishes Congress's view that contemporaneous traders are harmed by illicit trading.  A Fair Fund here would effectuate Congress's intent to provide a right to recover damages to those injured investors in insider trading cases.

Second, the unique aspects of this unprecedented case make a Fair Fund particularly appropriate.  An important issue when considering whether to recommend the creation of a Fair Fund is whether it is feasible to do a distribution to possibly harmed traders given the size of the funds at issue.  In a typical insider trading case, where the illicit gains are significantly less than the illicit gains at issue here, or where the illicit trades were done over an extended time period and/or in multiple securities, it may not be feasible or cost-effective to recommend a Fair Fund.  This is not the case here.  The Commission has collected over $600 million, the securities of only two companies are involved, and the time period at issue is a discrete seven-day trading period.

Third, although any contemplated distribution necessarily involves administrative costs, those costs do not outweigh the Commission's -- and public -- interest in distributing money to injured investors.  Moreover, Section 21(d)(4) of the Exchange Act specifically provides that disgorgement funds "shall not be distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the disgorged funds" and Section 308(a) of the Sarbanes-Oxley Act provides that Fair Funds are to be established "for the benefit of the victims" of a securities law violation.  *Id.*  In any case, all distributions from the Fair Fund, including distributions for administrative costs, will be subject to Court approval.

For these reasons and the reasons discussed below, the Court should establish a Fair Fund. The establishment of a Fair Fund and appointment of a Tax Administrator is a necessary precursor to developing a plan of distribution ("Plan") and ultimately distributing funds to harmed investors.

## I.    BACKGROUND

The Commission commenced this action on November 20, 2012, when it charged CR Intrinsic as part of an insider trading scheme involving CR Intrinsic portfolio manager Mathew Martoma ("Martoma") that generated approximately $275 million in illicit profits and avoided losses.[1] The Commission alleged that in 2007 and 2008, two pharmaceutical companies, Elan Corporation, plc ("Elan") and Wyeth, conducted a joint venture to develop a drug designed to treat Alzheimer's disease. Dr. Sidney Gilman ("Gilman"),[2] then a professor of neurology at the University of Michigan, served as the chairman of the Safety Monitoring Committee responsible for overseeing the clinical trial for the drug and received material nonpublic information concerning the ongoing clinical trial. In addition, in June 2008, after the clinical trial was concluded, Elan and Wyeth selected Gilman to present the clinical trial results to the public, and provided him with the full trial results approximately two weeks before Gilman announced them to the public on July 29, 2008 at a medical conference, which was to coincide with the after-

---

[1] Simultaneously with the filing of the Commission's action, Martoma was arrested by the FBI and criminally charged for his role in the scheme. He was convicted of two counts of securities fraud and one count of conspiracy to commit securities fraud in February 2014, and was sentenced, on September 8, 2014, to nine years in prison and ordered to pay criminal forfeiture totaling approximately $9.3 million. The Commission's case against Martoma is pending.

[2] In exchange for his cooperation, the U.S. Attorney's Office for the Southern District of New York (the "USAO") agreed not to prosecute Gilman, who promptly settled the liability and disgorgement aspects of the Commission's case against him. On November 21, 2012, Gilman consented to the entry of a Final Judgment enjoining him from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Gilman agreed to disgorgement of $186,781, and prejudgment interest of $48,087. Pursuant to the Final Judgment, the payments from Gilman to the Commission were sent to the United States Treasury.

3

market hours public announcement of the trial results by the two companies (the "July 29 Announcement").

Between 2006 and 2008, Gilman spoke frequently with Martoma through consultations arranged by an expert network. During these conversations, Gilman provided Martoma with material nonpublic information concerning the clinical trial. As soon as he obtained the full results for the clinical trial on July 17, 2008, Gilman breached his duty of confidentiality to Elan and Wyeth by providing Martoma those results as well.

Throughout January 2007 to July 2008, CR Intrinsic and certain affiliates, in part at Martoma's direction, had been net acquirers of Elan and Wyeth securities and had established combined long positions in these issuers of over $700 million. After Martoma received the detailed trial results from Gilman on July 17 and 18, 2008, Martoma caused hedge fund portfolios associated with Defendants to make trades ahead of the July 29 Announcement. Beginning on July 20, 2008, Martoma communicated with CR Intrinsic's owner and founder. Thereafter, from July 21, 2008 through July 29, 2008, Defendants liquidated their positions in Elan and Wyeth, eventually selling all of their holdings in a matter of days, and then established short equity and bearish options positions so that they could profit from the July 29 Announcement. Defendants' trading between July 21, 2008 and July 29, 2008 constituted over 20 percent of the reported trading volume of Elan stock and over 10 percent of the reported trading volume of Wyeth stock.

After the July 29 Announcement, the stock price of both Elan and Wyeth dropped substantially. As a result of their re-positioning based on the pre-announcement trades, Defendants collectively reaped illicit gains (that is, avoided losses and earned profits) of approximately $275 million. Of this amount, approximately $220 million resulted from trading

4

in Elan securities, while the remainder, approximately $56 million, resulted from trading in Wyeth securities.

The Commission charged CR Intrinsic, Martoma, and Gilman with violations of Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. In an amended Complaint, filed March 15, 2013, the SEC named as relief defendants certain affiliates of CR Intrinsic that benefitted from the illegal trades in Elan and Wyeth securities: CR Intrinsic Investments, LLC,[3] S.A.C. Capital Advisors, LLC ("S.A.C. Capital"),[4] S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, and S.A.C. Select Fund, LLC.[5]

On March 18, 2013, the Commission settled its claims against Defendants based on their trading Elan and Wyeth securities while in possession of the material nonpublic information that Martoma obtained from Gilman. Without admitting or denying the charges, Defendants agreed to pay $274,972,541 in disgorgement and $51,802,381.22 in prejudgment interest on a joint and several basis to settle the Commission's charges. CR Intrinsic also agreed to pay a one-time civil penalty of $274,972,541. In total, Defendants agreed to pay $601,747,463.22 (hereinafter the "Fund") to settle the Commission's charges. In April 2013, the Court issued a decision and order conditionally approving the proposed settlement. *SEC v. CR Intrinsic Investors, LLC*, 939 F. Supp. 2d 431, 435 (S.D.N.Y. 2013).

---

[3] At all times relevant to the Commission's allegations, CR Intrinsic Investments, LLC was a hedge fund affiliated with CR Intrinsic that benefitted from the illegal insider trades in Elan and Wyeth securities that Martoma and CR Intrinsic caused to be executed in July 2008.

[4] At all times relevant to the Commission's allegations, S.A.C. Capital was an investment adviser located in Stamford, Connecticut that managed certain affiliated hedge funds that benefitted from the illegal insider trades in Elan and Wyeth securities that Martoma and CR Intrinsic caused to be executed in July 2008.

[5] At all times relevant to the Commission's allegations, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, and S.A.C. Select Fund, LLC were hedge funds affiliated with S.A.C. Capital that benefitted from the illegal insider trades in Elan and Wyeth securities that Martoma and CR Intrinsic caused to be executed in July 2008.

Thereafter, on June 18, 2014, the Court finally approved the Commission's settlement with Defendants and entered the Final Judgments.  On or about August 4, 2014, $601,832,697.04 was paid to the Clerk of the Court and deposited into the CRIS account[6] on August 6, 2014 ("the Distribution Fund")..

After approving the settlement in this case, the Court entered an order on July 2, 2014: (i) allowing interested parties to make submissions to the Commission as to whether a Fair Fund should be established to distribute the Distribution Fund; (ii) directing the Commission to advise interested parties of the position it intends to take in the motion as soon as the Commission makes its determination; and (iii) ordering that the Commission make a motion to the Court concerning the treatment of the Fund.  After the Court granted certain extensions of time, on October 30, 2014, the Commission's staff communicated to interested parties who had made submissions to the Commission through the Court-ordered process that the staff will petition the Court to establish a Fair Fund.  The Commission now moves the Court to establish a Fair Fund and appoint a Tax Administrator in this matter.

## II.    THE COURT SHOULD ESTABLISH A FAIR FUND

To facilitate any ultimate distribution, the Commission now moves the Court to establish a Fair Fund pursuant to Section 308(a) of the Sarbanes-Oxley Act,[7] which provides in relevant part:

> *Civil Penalties to be Used for the Relief of Victims.* If, in any judicial or administrative action brought by the Commission under the securities laws, the Commission obtains a civil penalty against any person for a violation of such laws, or such person agrees, in settlement of any such action, to such civil penalty, the amount of such civil penalty shall, on the motion or at the direction of the Commission, be added to and become

---

[6] The payment is reflected by Receipt Number 1446500564.

[7] Section 308 was amended by Section 929B of the Dodd-Frank Act, Public Law 111-203, 2010 HR 4173 (July 2010).

part of a disgorgement fund or other fund established for the benefit of
the victims of such violation.

*See* 15 U.S.C. § 7246(a).  The Commission brought this action under the securities laws and CR

Intrinsic was ordered to pay a civil penalty pursuant to the consent judgment entered against it.

Compensating injured investors is a core part of the SEC's mission and the result that Congress

intended when it included the Fair Fund provision in the Sarbanes-Oxley Act and amended that

Section in the Dodd-Frank Act to make penalties collected available for distribution.  Because

disgorgement funds (which represent ill-gotten gain) may not necessarily be sufficient to

compensate fully investors for their harm, the addition of penalties collected to a Fair Fund may

be necessary to provide full compensation for such harm.

Whether any particular investor will receive a distribution will ultimately be subject to

the Plan that the Court approves.  However, the Commission recommends that the Fair Fund be

established for the benefit of those investors who traded contemporaneously with Defendants

from July 21 to July 29, 2008, up to 100% of such investors' harm, with the remainder of the

funds, if any, to be sent to the Treasury.  Trades are "contemporaneous" if they occur within a

reasonable period of time, usually limited to a few days, of the insider trading.  *In re Take-Two*

*Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 n. 51 (S.D.N.Y. 2008), *citing, inter alia, Shapiro*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F. 2d 228, 241 (2d Cir. 1974); *In re Oxford*

*Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 144 (S.D.N.Y. 1999).

A.  **Contemporaneous Traders Were Harmed By The Illicit Trading**

In the Second Circuit, there is substantial precedent holding that contemporaneous traders

are harmed by classical insider trading.  *See Wilson v. Comtech Telecommunications Corp.*, 648

F.2d 88 (2d Cir. 1981); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980); *Shapiro*

495 F. 2d at 228.  These cases hold that contemporaneous traders are necessarily harmed when

7

they traded at roughly the same time as an insider trader, even if the trades took place in the

anonymous environment of a national securities exchange. Thus, in 1974, in *Shapiro*, the

Second Circuit rejected defendants' arguments that plaintiffs could not have been harmed by the

insider trading because there was no direct connection between defendants' failure to disclose

that they were in possession of material nonpublic information when they traded and plaintiffs'

purchases of stock. 495 F. 2d at 239-240. Instead, the court found that "the requisite element of

causation in fact has been established by the admitted withholding by defendants of material

inside information which they were under an obligation to disclose, such information being

clearly material in the sense that plaintiffs as reasonable investors might have considered it

important in making their decision to purchase" the stock. *Id.* at 240.

In 1988, Congress codified a private right of action to allow for recovery by

contemporaneous traders. As part of the Insider Trading and Securities Fraud Enforcement Act

of 1988, Congress enacted Section 20A of the Exchange Act, which provides in relevant part:

> Private Rights of Action Based on Contemporaneous Trading.
> Any person who violates any provision of this title or the rules or
> regulations thereunder by purchasing or selling a security while in
> possession of material, nonpublic information shall be liable in an
> action in any court of competent jurisdiction to any person who,
> contemporaneously with the purchase or sale of securities that is
> the subject of such violation, has purchased (where such violation
> is based on a sale of securities) or sold (where such violation is
> based on a purchase of securities) securities of the same class.

15 U.S.C. § 78u-1(a). Thus, where a defendant conducts insider trading in connection with the

sale of securities, it is subject to liability to traders that purchased the same securities

contemporaneously. Section 20A's legislative history made clear that it was intended to

establish a private right of action for insider trading codifying and broadening the right of action

recognized by the case law developed in this Circuit. H.R. REP. 100-910, 1988 WL 169923, at

8

*26 (Sept. 9, 1988) (stating that Congress "specifically intended" Section 20A to "overturn cases which have precluded recovery for plaintiffs where the defendant's [insider trading] violation is premised upon the misappropriation theory." *Id*. at *26 (Sept. 9, 1988), *citing Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir. 1983)).

### B.   A Fair Fund Is Appropriate In The Circumstances Of This Case

The unprecedented nature of this case – which involves nearly $602 million collected from the Defendants – also supports the establishment of a Fair Fund.  In the vast majority of insider trading cases, the disgorgement and penalties at issue are significantly less than the amount at issue in this case.  However, the nearly $602 million that has been deposited in the CRIS account here should assure there is ample money to make a distribution feasible.  Further, although the trading took place in 2008, it occurred over a discrete and condensed seven day period of time.  Contemporaneous traders in this case should be limited to traders who traded within that period.

### C.   The Potential Administrative Expenses – All Of Which Are Subject To Court Approval – Do Not Outweigh Establishing A Fair Fund For Injured Investors

Moreover, although a portion of the Fair Fund will be used to pay administrative expenses, that does not counsel against the creation of a Fair Fund.  All distributions from the Fair Fund, including any expenses, are subject to Court approval.  In addition, the Exchange Act has specific provisions designed to ensure that the money distributed goes to the injured investors and not attorney fees.  Section 21(d)(4) of the Exchange Act provides:

> *Prohibition of Attorneys' Fees Paid from Commission Disgorgement Funds*. Except as otherwise ordered by the court upon motion by the Commission, or, in the case of an administrative action, as otherwise ordered by the Commission, funds disgorged as the result of an action brought by the Commission in Federal court, or as a result of any Commission administrative action, *shall not be distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the disgorged funds*.

*Id*. (emphasis added). The proposed Fair Fund in *SEC v. CR Intrinsic* qualifies as a disgorgement fund under Section 21(d)(4) because approximately $275 million of the roughly $602 million Fair Fund would be comprised of disgorgement from the CR Intrinsic defendants and because it will be created under Section 308(a) of the Sarbanes-Oxley Act, which expressly refers to "disgorgement fund[s]." Section 308(a) of the Sarbanes-Oxley Act states that Fair Funds are to be established "for the benefit of the victims" of a securities law violation. *Id*.

* * *

Accordingly, the Commission requests that the Court authorize the establishment of a Fair Fund consisting of the disgorgement, prejudgment interest and civil penalties paid by Defendants, plus interest earned on those funds minus court registry fees, taxes, and other expenses of the Fund. As of November 12,2 014, the balance of the CRIS account was $601,849,787.32.

The Commission staff is in the process of soliciting a distribution agent and will return to the Court for approval of the recommended distribution agent. Following the appointment of a distribution agent, the Commission staff will work together with the distribution agent and its expert to develop a methodology for distribution and will submit to the Court a proposed plan of distribution for approval.

10

### III.   THE COURT SHOULD APPOINT DAMASCO AS THE TAX ADMINISTRATOR FOR THE FAIR FUND

The Fair Fund constitutes a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1.468B-1 through 1.468B-5. A Tax Administrator, on behalf of the Fair Fund, should be appointed and authorized to take all necessary steps to enable the Fair Fund to obtain and maintain the status of a taxable QSF, including the filing of all required elections and statements contemplated by those provisions. The Tax Administrator would cause the Fair Fund to pay taxes in a manner consistent with treatment of the Fund as a QSF. The reasonable costs, fees, and other expenses incurred in the performance of the Tax Administrator's duties would be paid by the Fair Fund in accordance with the agreement between the Commission and the Tax Administrator dated January 11, 2013.

| SERVICE | FIXED FEE |
|---|---|
| Income tax returns, including items 1-6 (below). | $1800 |
| Income tax returns, including items 1-6 (below), for funds with assets of $120,000 or less and are opened and closed within the same calendar year. | $850 |
| Loss Carryback (claim for refund) returns. | $500 |

Fixed fee tax compliance services include:[8]

1. Obtaining a federal tax identification number ("FEIN") for the QSF.

2. Preparing and filing federal and state income tax returns, as required.

3. Where required, calculating quarterly estimated tax payments and providing information to the Court so that payments may be made timely.

---

[8] These fixed fees include all copying and routine postage expenses. They also include any internal expenses of the Tax Administrator in performing these services, such as facsimile fees and telephone charges. Expenses that are not included are expedited delivery fees (such as Federal Express) and other extraordinary costs, such as extended telephone conferences and reports. Additional tax compliance services and services for the administration of the QSF would be provided at the Commission's request and billed at the Tax Administrator's current rates discounted by 20%.

4. Making arrangements with the SEC or its agents to pay tax liability.

5. Calculating and recommending retention of a reserve, if necessary, for penalties and interest to be assessed as a result of any late filing of tax returns and late payment of taxes.

6. Determining and complying with tax reporting obligations of the QSF relating to distributions or payments to vendors, if applicable.

Damasco, a certified public accounting firm located in Half Moon Bay, California, has served as a tax administrator on numerous QSF's established by the Commission. The Commission staff respectfully requests that the Court appoint Damasco as Tax Administrator to execute all income tax reporting requirements, including the preparation and filing of tax returns, with respect to the Fair Fund under this Court's jurisdiction.

## IV.    CONCLUSION

For all the foregoing reasons, the Commission respectfully requests that this Court enter an Order establishing a Fair Fund and appointing Damasco as Tax Administrator and granting such other relief as it deems just and proper.  A proposed Order is attached.

Dated:  November 14, 2014

Respectfully submitted,

/s/Nichola L. Timmons
Nichola L. Timmons
Assistant Director
Attorney for Plaintiff
Securities & Exchange Commission
100 F St., NE
Washington, DC 20549-5631
(202) 551-4456
TimmonsN@sec.gov

Sanjay Wadhwa
Senior Associate Director
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0181
WadhwaS@sec.gov

Of Counsel:
Amelia A. Cottrell (CottrellA@sec.gov)
Charles D. Riely (RielyC@sec.gov)
Susan S. Pecaro (PecaroS@sec.gov)
Matthew J. Watkins (WatkinsMa@sec.gov)

# ATTACHMENT

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | 12 Civ. 8466 (VM) |
| | : | |
| CR INTRINSIC INVESTORS, LLC, | : | |
| MATHEW MARTOMA, | : | |
|  and | : | |
| DR. SIDNEY GILMAN, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| CR INTRINSIC INVESTMENTS, LLC, | : | |
| S.A.C. CAPITAL ADVISORS, LLC, | : | |
| S.A.C. CAPITAL ASSOCIATES, LLC, | : | |
| S.A.C. INTERNATIONAL EQUITIES, LLC, | : | |
|  and | : | |
| S.A.C. SELECT FUND, LLC, | : | |
| | : | |
| Relief Defendants. | : | |
| | : | |

## ORDER TO ESTABLISH A FAIR FUND FOR INVESTOR VICTIMS AND APPOINT A TAX ADMINISTRATOR

The Court having reviewed the United States Securities and Exchange Commission's

("Commission") Motion to Establish a Fair Fund for Investor Victims and Appoint a Tax

Administrator and for good cause shown,

1

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED.

2. A Fair Fund is established pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended by the Dodd-Frank Act of 2010 [15 U.S.C. § 7246(a)], from the funds deposited with the Registry of the Court under the case name designation "SEC v. CR Intrinsic Investors, LLC, *et al.*," plus interest earned on those funds minus court registry fees, taxes, and other expenses pursuant to the Final Judgments entered in this case (the "Fund").

3. Damasco & Associates LLP is appointed as Tax Administrator to execute all income tax reporting requirements, including the preparation and filing of tax returns, with respect to the Fund.

4. Damasco & Associates LLP shall be designated the Tax Administrator of the Fund, pursuant to Section 468B(g) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 468B(g), and related regulations, and shall satisfy the administrative requirements imposed by those regulations, including but not limited to (a) obtaining a taxpayer identification number, (b) filing applicable federal, state, and local tax returns and paying taxes reported thereon out of the Fund, and (c) satisfying any information, reporting, or withholding requirements imposed on distributions from the Fund. The Tax Administrator shall contemporaneously provide copies of all such filings to the Commission's counsel of record.

5. The Tax Administrator shall, at such times as the Tax Administrator deems necessary to fulfill the tax obligations of the Fund, request that the Commission's counsel of record file with the Court a motion, supported by the Tax Administrator's declaration of the amount of taxes

due, to transfer funds from the Fund on deposit with the Court to pay any tax obligations of the Fund.

6. The Tax Administrator shall be entitled to charge reasonable fees for tax compliance services and related expenses in accordance with its agreement with the Commission. The Tax Administrator shall, at such times as the Tax Administrator deems appropriate, submit a declaration of fees and expenses to the Commission's counsel of record for submission to the Court for approval and for payment from the Fund. No fees or expenses may be paid absent the Court's prior approval.

7. At least ten (10) days before any motion to pay fees and expenses is filed with the Court, the Tax Administrator shall provide the Commission's counsel of record with a draft of the supporting declaration for review. If the Commission has any corrections or objections to the declaration, the Tax Administrator and the Commission's counsel of record shall attempt to resolve them on a consensual basis. If a consensual resolution is not reached, the Commission may submit with the motion any objections along with the Tax Administrator's response thereto.


DATED: _____, 2014        _____

                                       UNITED STATES DISTRICT COURT JUDGE