UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                            )
**SECURITIES AND EXCHANGE COMMISSION,**                     )
                                                            )
                              **Plaintiff,** )
                                                            )
  v.                                                        )
                                                            )
**CR INTRINSIC INVESTORS, LLC, MATHEW MARTOMA,**            )
**and DR. SIDNEY GILMAN,**                                  )
                                                            )
                          **Defendants,** ) Civil Action No.
  and                                                       ) 12-cv-8466 (VM)
                                                            )
**CR INTRINSIC INVESTMENTS, LLC,**                          )
**S.A.C. CAPITAL ADVISORS, LLC,**                           )
**S.A.C. CAPITAL ASSOCIATES, LLC,**                         )
**S.A.C. INTERNATIONAL EQUITIES, LLC,**                     )
**and S.A.C. SELECT FUND, LLC,**                            )
                                                            )
                          **Relief Defendants.** )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR AN ORDER
APPROVING A DISTRIBUTION PLAN FOR THE CR INTRINSIC FAIR FUND**

    Plaintiff United States Securities and Exchange Commission ("SEC" or the "Commission") respectfully submits this Memorandum of Law in support of the Commission's motion requesting from the Court an order approving the Commission's proposed plan for distribution of the Fair Fund established by the Court ("Distribution Plan").

    **I.    BACKGROUND**

    The Commission commenced this action on November 20, 2012, when it charged CR Intrinsic Investors, LLC ("CR Intrinsic"), Mathew Martoma, and Dr. Sidney Gilman

1

as part of an insider trading scheme that generated approximately $275 million in illicit profits and avoided losses. On June 18, 2014, the Court gave final approval to the Commission's settlement of its claims against CR Intrinsic and Relief Defendants[1] (collectively "Defendants") based on their trading Elan Corporation, plc ("Elan") and Wyeth securities while in possession of the material nonpublic information about a pending public announcement of negative trial results by the two pharmaceutical companies, which had conducted a joint venture to develop a drug designed to treat Alzheimer's disease. Ahead of the negative July 29, 2008 announcement ("Announcement"), from July 21, 2008 through July 29, 2008, Defendants had liquidated their positions in Elan and Wyeth, eventually selling all of their holdings in a matter of days, and then established short equity and bearish options positions so that they could profit from the Announcement.

Pursuant to the Final Judgments entered by the Court, Defendants agreed to pay $274,972,541 in disgorgement and $51,802,381 in prejudgment interest on a joint and several basis. CR Intrinsic also agreed to pay a one-time civil penalty of $274,972,541. On or about August 4, 2014, $601,832,697 was paid to the Clerk of the Court and deposited into the Court Registry Investment System account on August 6, 2014 ("the Distribution Fund").[2] On January 26, 2015, the Court ordered the establishment of a Fair Fund and appointed a Tax Administrator and, on April 22, 2015, appointed Garden City Group, LLC ("GCG") as Distribution Agent. Since GCG's appointment, the SEC staff has been working with the Distribution Agent and the Distribution Agent's expert, Forensic Economics Inc., to develop a methodology for the Distribution Plan.

---

[1] The Relief Defendants are CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, and S.A.C. Select Fund, LLC.

[2] The payment is reflected by Recipient Number 1446500564. The current balance of the Fair Fund, as of November 19, 2015, is $601,899,330.25.

## II. ARGUMENT

### A. The Applicable Standard

The Court's review of a proposed distribution plan considers whether the plan is fair and reasonable. *See Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) ("once the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end") (citing *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). Nearly every plan to distribute funds obtained in a Commission enforcement action requires choices to be made regarding the allocation of funds between and among potential claimants within the parameters of the amounts recovered. As the Court of Appeals has explained, "[t]his kind of line-drawing – which inevitably leaves out some potential claimants – is . . . appropriately left to the experience and expertise of the SEC in the first instance." *SEC v. Wang,* 944 F.2d at 88; *see SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *SEC v. Levine*, 881 F.2d 1165, 1182 (2d Cir. 1989).

For the reasons articulated below, the Commission submits that the Distribution Plan constitutes a fair and reasonable allocation of the funds available for distribution and should be approved.

### B. The Proposed Distribution Plan is a Fair and Reasonable Allocation of the CR Intrinsic Fair Fund.

The goal of the Distribution Plan is to compensate those investors who traded contemporaneously with the Defendant insider traders, consistent with the Congressional intent underlying Section 20A of the Exchange Act[3] and Second Circuit case law.[4]

---

[3] 15 U.S.C. §78u-1(a). In Section 20A of the Exchange Act, Congress created a private right of action for investors harmed by contemporaneous trading with those who engage in insider trading.

### 1. Recovery Period

The recovery period will be from July 21, 2008 through July 29, 2008, the period during which Defendants liquidated their positions in Elan and Wyeth, and then established short equity and bearish options positions so that they could benefit from the Announcement of the negative trial results ("Recovery Period").[5]

### 2. Eligible Securities

The eligible securities included in the distribution are Wyeth common stock, Wyeth put and call options, Elan American Depository Shares ("ADS"), Elan ordinary shares and Elan put and call options ("Eligible Securities"). Both Elan and Wyeth have subsequently been acquired by other companies,[6] but at the time of the alleged conduct by Defendants, Wyeth common stock and Elan ADS traded on the New York Stock Exchange, while Elan ordinary shares were traded on the Irish and London exchanges.

### 3. Plan of Allocation

#### a. Elan ADS and Common Stock, Wyeth Common Stock

In determining the Distribution Plan's measure of investor harm, the Distribution Agent's expert conducted event studies for July 30, 2008, the first business day following the disclosure of the negative clinical trial results by Elan and Wyeth. The event studies calculated the inflation in Elan's ADS and Wyeth stock price, after accounting for market and industry movements, as

---

[4] *See Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir. 1981); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F. 2d 228 (2d Cir. 1974).

[5] Capitalized terms are as defined in the attached Distribution Plan.

[6] Elan was purchased by Perrigo Company, plc in 2013; while Wyeth was acquired by Pfizer, Inc. ("Pfizer") in 2009.

-43.1% ($14.55) and -12.33% ($5.56), respectively. The expert also determined that the damage to Elan's ordinary shares was the same as the damage to the ADS, after accounting for market opening and closing times and currency conversion.

Therefore, for shares of common stock purchased during the Recovery Period, and still held as of the close of business on July 29, 2008, the Recognized Loss per Share is as follows: $5.56 for shares of Wyeth common stock; and $14.55 for Elan ADS and Elan ordinary shares.[7]

The First In First Out ("FIFO") methodology will be applied to all transactions for Potentially Eligible Claimants who made multiple purchases, acquisitions or sales of the Eligible Securities during the Recovery Period.[8]

### b. Recognized Loss of Call and Put Options

The expert determined that there was damage to the Wyeth and Elan ADS call and put options during the Recovery Period.[9] With respect to either Wyeth or Elan ADS call options purchased and sold, exercised or expired during the Recovery Period, the Recognized Loss per Share is $0.00. For put options in either Wyeth or Elan ADS sold and re-purchased, assigned, or expired during the Recovery Period, the Recognized Loss per Share is $0.00.[10]

---

[7] The Recognized Loss for shares purchased and sold during the Recovery Period is $0.00 because the expert determined that the inflated price stayed the same throughout the Recovery Period. Therefore, any investor who purchased at the inflated price and sold during the Recovery Period also sold at the inflated price, resulting in no loss from the undisclosed material non-public information.

[8] The FIFO method will be applied as follows: the sales of shares during the Recovery Period will be matched in chronological order first against the Claimant's closing position on the day before the first day of the Recovery Period, until that day's closing position has been exhausted; then remaining sales during the Recovery Period will be matched in chronological order against purchases or acquisitions made during the Recovery Period beginning with the earliest purchase or acquisition. Purchases and sales of Eligible Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

[9] The expert found no data relating to trading of options in Elan ordinary shares.

[10] *See* footnote 7.

For call options purchased during the Recovery Period, and still held as of the close of business on July 29, 2008, the Recognized Loss Per Option Contract for Wyeth is the amount listed on Table A multiplied by 100 and for Elan ADS, the amount listed on Table B multiplied by 100.

For shares of put options sold (written) during the Recovery Period that were still held as of the close of business on July 29, 2008, the Recognized Loss Per Option Contract is the amount listed on Table B multiplied by 100 for Elan ADS and the amount listed on Table A multiplied by 100 for Wyeth.

The expert recognized that some investors may have hedged transactions that, considered separately, had Recognized Losses. To prevent windfall gains to Eligible Claimants, the Plan of Allocation offsets Recognized Gains from the sale of call options or the purchase of put options during the Recovery Period against Recognized Losses. The Total Eligible Loss Amount for each Eligible Claimant will be calculated as the difference between Recognized Gains and Recognized Losses, as long as the Eligible Claimant had a net Recognized Loss.

### c. Pro-Rata Application

If there are not enough funds to compensate Eligible Claimants for 100% of their Recognized Loss, the Distribution Agent shall apply a pro-rata percentage to each Eligible Claimant's Recognized Loss.

### 4. Compensation from Other Sources

Paragraph 1.10 of the Distribution Plan states that a Potentially Eligible Claimant's Distribution Payment will be reduced by the amount of any compensation for the loss resulting from the conduct described in the complaint in this case that was received from another source

6

(e.g., class action settlement), to the extent it is known to the Distribution Agent.  The claim form also will require disclosure of any such compensation.  Section 20A(b)(2) of the Exchange Act diminishes the recovery in any private insider trading action by the amount the defendant has been required to disgorge in any related Commission action.[11]  We assume any subsequent compensation in the class actions will be reduced by any compensation received for the same injury by the Eligible Claimant in the Fair Fund distribution.

### 5. Use of Distribution Funds

Section 21(d)(4) of the Exchange Act provides:

> *Prohibition of Attorneys' Fees Paid from Commission Disgorgement Funds*. Except as otherwise ordered by the court upon motion by the Commission, or, in the case of an administrative action, as otherwise ordered by the Commission, funds disgorged as the result of an action brought by the Commission in Federal court, . . . *shall not be distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the disgorged funds.*

*Id.* (emphasis added). The Fair Fund in this action qualifies as a disgorgement fund under Section 21(d)(4) because approximately $275 million of the Fair Fund is comprised of disgorgement from the Defendants, and because it was created pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended, which expressly refers to "disgorgement fund[s]."[12] Section 308(a) provides that Fair Funds are to be established "for the benefit of the victims" of a securities law violation.

---

[11] Section 20(A)(b)(2) of the Exchange Act states, in relevant part: "The total amount of damages imposed against any person under subsection (a) shall be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission. . . ."

[12] 15 U.S.C. § 7246(a).

### 6. Disposition of Remaining Funds

The Distribution Plan, Paragraph 4.4, includes the provisions of the Stipulation (approved by the Court on December 23, 2014) entered into by the SEC staff, Pfizer, and certain individual named plaintiffs in a private class action regarding the disposition of any remaining funds at the end of the distribution. Of course, there is no certainty that there will be any remaining funds attributable to Wyeth trades. The stipulation provides in part:

> Within 30 days after the SEC's submission of the final accounting of the distribution to the Court, the SEC shall inform the Court and Pfizer of the amount of the Remaining Funds, if any, and declare the SEC's position as to how the Remaining Funds shall be distributed, and Pfizer shall have 30 days to object or otherwise respond to the SEC's position.[13]

Therefore, the Commission will return to the Court after the submission of the final accounting to the Court with a recommendation as to how the remaining funds, if any, should be distributed.

### III. CONCLUSION

The staff believes that the proposed Distribution Plan provides a fair and reasonable plan for distributing the Fair Fund established by the Court. For all of the foregoing reasons, the Commission respectfully requests the Court to grant its Motion for an Order Approving a Plan of Distribution for the CR Intrinsic Fair Fund.

Dated: November 23, 2015.

        Respectfully submitted,

        /s/ Susan S. Pecaro
        Susan S. Pecaro
        Nichola L. Timmons
        Attorneys for Plaintiff
        Securities & Exchange Commission
        100 F St., NE

---

[13] *Id.*

Washington, DC 20549-5631
pecaros@sec.gov
timmonsn@sec.gov
Telephone: 202-551-4489 (Pecaro)
Telephone: 202-551-4456 (Timmons)
Fax: 202-572-1372