December 1, 2015

**BY FACSIMILE**

The Hon. Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/9/15

*Re: SEC v. CR Intrinsic Investors, LLC, No.12 Civ. 8466 (VM)*

Dear Judge Marrero:

I write you today as an interested party in the above captioned matter with respect to the comment period on the Proposed Distribution Plan.

The 2nd Circuit Court of Appeals reiterated in *Shapiro* its' holding in *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1971), that "the essential purpose of Rule 10b – 5 is to prevent corporate insiders from taking advantage of the uninformed outsiders". The *Shapiro* Court explained that "while the concepts of reliance and causation have been used interchangeably in the context of a Rule 10b – 5 claim, the proper test to determine whether causation in fact has been established in a non-disclosure case is 'whether the plaintiff would have been influenced to act differently if the defendant had disclosed to him the undisclosed fact'." *List v. Fashion Park, Inc. supra,* 340 F.2d at 463. See *Chasins v. Smith, Barney & Co., supra,* 483 F.2d at 1172. Cf. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 373-75, (2d Cir.), cert. denied, 414 U.S. 910 (1973).

The defendants in this case became substantially aware of the Bapineuzumab Clinical Trial results on July 17, 2008. While their selling did not begin until July 21, 2008 the possession of this insider information allowed the defendants to take advantage of uninformed outsiders exampled by the defendant's decision to abstain from further ELN stock accumulation. Any prudent trader in possession of that same information at that moment in time would have done the very same thing. The positive and negative effects on the market resulting from this type of voluminous trading is no better evidenced than through CR Intrinsic's pioneering efforts to disguise and or hide their eventual ELN and WYE liquidations.

In its' Memorandum of Law in Support of an Order Approving a Distribution Plan the SEC agreed the goal of the Proposed Plan is to "compensate those investors who traded contemporaneously with the defendants". The Second Circuit appears to accommodate varying definitions of "contemporaneous" when authorizing Fair Fund Settlements. I believe that by utilizing a less rigid interpretation of "contemporaneous" in this matter the Fair Fund could allow buyers and sellers of ELN and WYE Securities who made trades on July 17 & 18 to not be further disadvantaged by the defendants who utilized illegally obtained information to take advantage of uninformed outsiders through their sudden trading abstention.

Respectfully submitted,

Robert L. Bierman

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by non-party Robert L. Bierman.

**SO ORDERED.**

12-9-15
DATE

Victor Marrero, U.S.D.J.