**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                   :
              Plaintiff,           :
                                   :
     -  against  -                 :     12 Civ. 8466 (VM)
                                   :
CR INTRINSIC INVESTORS, LLC,       :
MATHEW MARTOMA, and DR. SIDNEY     :
GILMAN,                            :
                                   :
              Defendants,          :
                                   :
and                                :     **DECISION AND ORDER**
                                   :
CR INTRINSIC INVESTMENTS, LLC,     :
S.A.C. CAPITAL ADVISORS, LLC,      :
S.A.C. CAPITAL ASSOCIATES, LLC,    :
S.A.C. INTERNATIONAL EQUITIES, LLC,:
and S.A.C. SELECT FUND, LLC,       :
                                   :
              Relief Defendants.   :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

By Order dated January 26, 2015, the Court granted the
United States Securities and Exchange Commission's ("SEC")
Motion to Establish a Fair Fund for Investor Victims ("Fair
Fund") pursuant to Section 308(a) of the Sarbanes-Oxley Act
of 2002, 15 U.S.C. Section 7246(a). (Dkt. No. 84.) The Fair
Fund comprises more than $600 million in disgorged funds
and civil penalties paid by defendant CR Intrinsic
Investors, LLC and relief defendants CR Intrinsic
Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C.
Capital Associates, LLC, S.A.C. International Equities,

1

LLC, and S.A.C. Select Fund, LLC (collectively with CR Intrinsic Investors, "Defendants") pursuant to a settlement of claims against Defendants for insider trading in securities of Elan Corporation plc ("Elan") and Wyeth. The Court appointed Garden City Group, LLC as Distribution Agent to consult with the SEC and oversee the administration of the distribution of the Fair Fund, which retained an economic expert to develop a methodology for distributing the Fair Fund to injured investors. (Dkt. No. 94.)

The SEC subsequently submitted a proposed distribution plan ("Distribution Plan" or "Plan") and corresponding Motion for an Order Approving a Distribution Plan for the CR Intrinsic Fair Fund ("Motion"). (Dkt. No. 102.) The Court approved a schedule for comments on the Distribution Plan from interested parties. (Dkt. No. 105.) The Court received written objections to certain aspects of the Distribution Plan from: 1) Simran Investment Group, LLC (Dkt. No. 107); 2) lead plaintiffs in the pending class action brought by Wyeth investors (Dkt. No. 108); 3) lead plaintiffs in the pending class action brought by Elan investors (Dkt. No. 109); 4) Defendants (Dkt. No. 111); 5) Pfizer, Inc. (Dkt. No. 112); and 6) Robert L. Bierman (Dkt. No. 115)(collectively "Commenters").

The Commenters objected principally to the following provisions: 1) the recoveries for Elan investors and Wyeth investors were pooled in a single fund according to the "Integrated Method" used by the SEC's economic expert; 2) Elan common stock and Wyeth options, types of securities in which Defendants did not trade, were included as eligible securities for purposes of recovery; 3) the Plan provided for an automatic dollar-by-dollar set-off of any amount recovered from an outside source, including class action recoveries; 4) the Plan included investors who traded after 4 p.m. on July 29, 2008; 5) the Plan omitted a prior stipulation regarding post-distribution procedures; 6) the Plan was unclear as to whether claimants receive prejudgment interest; and 7) the Plan omitted deadlines for filing of a motion to disburse and for the distribution agent's report.

After receipt of the foregoing comments, the SEC submitted a revised Distribution Plan ("Amended Distribution Plan") incorporating five of the proposed revisions and rejecting two others. (Dkt. No. 116.) Specifically, the Amended Distribution Plan reduces the total eligible loss amount by the amount of compensation received by another source; excludes after-hours traders on July 29, 2008; incorporates the stipulation regarding post-

distribution procedures; clarifies that claimants receive prejudgment interest; and specifies deadlines for filing a motion to disburse and for the distribution agent's final report. The Amended Distribution Plan maintains the pooling of Elan and Wyeth investor recoveries and continues to include types of Elan and Wyeth securities not traded by Defendants. (Dkt. No. 116, Ex. 1.)

The SEC explained its proposal to integrate the Wyeth and Elan recoveries into one recovery fund, noting that the purpose of the Fair Fund is to provide an equitable distribution to all investors harmed during the period of illegal trading, not to compensate claimants in proportion to Defendants' wrongly-gained profits in each company. (Dkt. No. 116 at 9-10.) The SEC's economic expert states that the integrated method "has the economic benefit of treating all claimants equally." (Dkt. No. 116, Ex. 2 at 5.) The SEC further explained that it proposed including Elan common stock and Wyeth options holders in the Fair Fund distribution because it would be "arbitrary and unreasonable" to include investors trading Elan options but exclude investors trading Wyeth options when both were harmed by Defendants' nondisclosure, merely because Defendants traded in one type of security but not the other. (Dkt. No. 116 at 11-14.)

4

The standard of review for a proposed Fair Fund distribution plan is whether the fund distribution plan "fairly and reasonably distribute[s] the limited Fair Fund proceeds among the potential claimants." Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C., 467 F.3d 73, 85 (2d Cir. 2006); see also SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991)("[O]nce the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end.").

As the SEC notes in its briefing, "nearly every plan to distribute funds obtained in an [SEC] enforcement action requires choices to be made regarding the allocation of funds between and among potential claimants within the parameters of the amounts recovered." (Dkt. No. 116 at 4.) The Second Circuit has recognized that disgorgement is an equitable remedy and that unlike damages, "it is a method of forcing a defendant to give up the amount by which he was unjustly enriched." Wang, 944 F.2d at 85 (quoting Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 102 (2d Cir. 1978)); see also Sec. & Exch. Comm'n v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987).

The Amended Distribution Plan was drafted with the goal of creating a fair distribution to all investors

5

harmed during the period of illegal trading by the inflation in Elan and Wyeth securities attributed to Defendants' undisclosed information. After notice to interested parties and a period of comment, the SEC considered the objections to the Plan and the majority of the comments and objections were incorporated into the Amended Distribution Plan. As to the several provisions that the SEC has declined to amend, the SEC provides a reasonable and detailed justification for doing so in the interest of prioritizing equitable distribution to injured investors. In particular, it is fair and reasonable that the available funds be distributed not in proportion to Defendants' gains in trading for each company, but relative to the total losses to investors from the withholding of non-public information.

Having considered Plaintiff's Motion, the Memorandum of Law in Support, the various objections expressed by the Commenters, and the Amended Distribution Plan, the Court grants the Motion and approves in its entirety the Amended Distribution Plan attached hereto.

6

## ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Securities and Exchange Commission's Motion to Approve Distribution Plan (Dkt. No. 102) is **GRANTED**; and it is further

**ORDERED** that the amended Distribution Plan attached hereto (Dkt. No. 116, Ex. 1) shall govern the administration and distribution of the Fair Fund previously established by Order entered January 26, 2015.

**SO ORDERED.**

Dated:     New York, New York
           4 February 2016

                              Victor Marrero
                              U.S.D.J.

7

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CR INTRINSIC INVESTORS, LLC, MATTHEW MARTOMA, and DR. SIDNEY GILMAN,** | ) |
| | ) |
| **Defendants,** | ) **Civil Action No.** |
| | ) **12-cv-8466 (VM)** |
| **and** | ) |
| | ) |
| **CR INTRINSIC INVESTMENTS, LLC, S.A.C. CAPITAL ADVISORS, LLC, S.A.C. CAPITAL ASSOCIATES, LLC, S.A.C. INTERNATIONAL EQUITIES, LLC, And S.AC. SELECT FUND, LLC,** | ) |
| | ) |
| **Relief Defendants.** | ) |

## DISTRIBUTION PLAN FOR CR INTRINSIC FAIR FUND

### INTRODUCTION

On November 20, 2012, the Securities and Exchange Commission ("SEC" or

"Commission") brought suit against Defendant CR Intrinsic Investors, LLC ("CR Intrinsic") and

two other defendants.[1] On March 15, 2013, the Commission amended its complaint to include

Relief Defendants CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital

Associates, LLC, S.A.C. International Equities, LLC, and S.A.C. Select Fund, LLC (collectively

---

[1] Complaint, SEC v. CR Intrinsic Investors, LLC, et al., 12-Civ-8466 (S.D.N.Y. 2012).  In addition to CR Intrinsic, the Commission also brought claims against individuals Matthew Martoma ("Martoma") and Dr. Sidney Gilman ("Gilman").  Martoma was convicted of two counts of securities fraud and one count of conspiracy to commit securities fraud in February 2014, and was sentenced on September 8, 2014, to nine years in prison and ordered to pay criminal forfeiture totaling approximately $9.3 million.  The Commission's case against Martoma is currently pending.  On November 21, 2012, Gilman consented to entry of a Final Judgment.  Gilman agreed to disgorgement of $186,781, and prejudgment interest of $48,087.  Pursuant to that Final Judgment, the payments from Gilman to the Commission were sent to the United States Treasury.

with CR Intrinsic, the "Defendants").[2] The Amended Complaint alleged that the Defendants made approximately $275 million in illegal profits or avoided losses in July 2008 by trading ahead of a negative public announcement involving the clinical trial results for an Alzheimer's drug being jointly developed by Elan Corporation, plc ("Elan") and Wyeth.

The Defendants entered consent agreements and on June 18, 2014 the Court entered Final Judgments ordering the Defendants to collectively pay disgorgement, prejudgment interest, and civil penalties in the amount totalling $601,747,463.22 to resolve the Commission's claims.[3] On or about August 7, 2014, $601,832,697.04 was paid to the Clerk of the Court and deposited into an interest-bearing account with the Court Registry Investment System ("CRIS") account on August 6, 2014. [4]

On January 26, 2015, a Fair Fund ("Fair Fund" or "Fund") comprised of the disgorgement, prejudgment interest and civil penalties paid collectively by the Defendants was established by the Court to compensate investor victims of the fraud and a Tax Administrator, Damasco & Associates LLP, was appointed to handle the tax obligations of the Fund.[5] On April 22, 2015, the Court entered an order appointing Garden City Group, LLC as the Distribution Agent for the Fair Fund to assist in overseeing the administration of the distribution of the Fair Fund in consultation with Commission staff, pursuant to the terms of this Distribution Plan.[6]

---

[2] Amended Complaint, SEC v. CR Intrinsic Investors, LLC, et al. (S.D.N.Y.2013).

[3] Final Judgment as to Defendant CR Intrinsic Investors, LLC; Final Judgment as to Relief Defendant CR Intrinsic Investments, LLC; Final Judgment as to Relief Defendant S.A.C. Capital Advisors, LLC; Final Judgment as to Relief Defendant S.A.C. Capital Associates, LLC; Final Judgment as to Relief Defendant S.A.C. International Equities, LLC; Final Judgment as to Relief Defendant S.A.C. Select Fund, LLC (S.D.N.Y. 2014).

[4] See Order, SEC v. CR Intrinsic Investors, LLC et al. (S.D.N.Y. June 18, 2014).

[5] Order to Establish a Fair Fund for Investor Victims and Appoint a Tax Administrator (S.D.N.Y. 2015).

[6] Order to Appoint a Distribution Agent (S.D.N.Y. 2015).

## ARTICLE I

## DEFINITIONS

This Distribution Plan sets forth the method and procedures for distributing the Fair Fund created in this matter. As used in this Distribution Plan, the following definitions shall apply:

1.1    **"Affiliate"** shall have the meaning set forth in Section 101(2) of Title 11 of the United States Code, 11 U.S.C. § 101(2).

1.2    "**Approved Claim**" shall mean the final amount of an Eligible Claimant's asserted claim that is ultimately approved for payment pursuant to this Distribution Plan.

1.3    **"Claims Bar Date"** shall mean the date established in accordance with this Distribution Plan by which a Potentially Eligible Claimant's Proof of Claim Form must be postmarked by or, if not sent by U.S. mail, received by the Distribution Agent to avoid the barring of any right of the Potentially Eligible Claimant to participate in any distribution from the Fair Fund. The Claims Bar Date shall be one hundred and twenty (120) days after the Distribution Agent's initial mailing of Claim Packets to Potentially Eligible Claimants as set forth in Section 2.11(h) below. Claims postmarked or, if not sent by U.S. mail, received after the Claims Bar Date will not be reviewed and evaluated.

1.4    **"Claim Deficiency Notice"** means the notice sent by the Distribution Agent to a Potentially Eligible Claimant whose claim is deficient in one or more ways (*e.g.*, failure to provide required information or documentation). The Claim Deficiency Notice shall advise the Potentially Eligible Claimant of the reason(s) for the deficiency and provide the opportunity to cure any such deficiencies. A Claim Deficiency Notice shall be provided no later than sixty (60) days after the Claims Bar Date.

3

1.5 **"Claims Determination Date"** shall mean the date on or before which the Distribution Agent is to reach its determination concerning the validity and amount of each Potentially Eligible Claimant's claim. Except as otherwise provided herein, the Claims Determination Date shall be no later than two hundred and ten (210) days following the Claims Bar Date.

1.6 **"Claim Packet"** shall mean the materials relevant to submitting a claim that will be provided to Potentially Eligible Claimants known to the Distribution Agent or to those people who request such materials. The Distribution Agent, in consultation with the Staff of the Commission, shall prepare the Claim Packet, which shall include, at a minimum, a copy of the Distribution Plan Notice and a Proof of Claim Form (together with instructions for completing the Proof of Claim Form).

1.7 **"Days"** shall mean calendar days, unless otherwise specified herein.

1.8 **"Determination Notice"** shall mean the notice sent by the Distribution Agent to a Potentially Eligible Claimant who filed a claim and which states the Distribution Agent's determination of the validity of the Potentially Eligible Claimant's claim. In the event the claim is denied, the Determination Notice will state the reason for such denial.

1.9 **"Distribution Agent"** shall mean Garden City Group, LLC ("GCG") (including its employees, agents, consultants or independent contractors), the Distribution Agent appointed by the Court to assist with the administration and distribution of the Fair Fund in accordance with the terms of this Distribution Plan and the Court's orders.

1.10 **"Distribution Payment"** shall mean the payment to an Eligible Claimant in accordance with the terms of this Distribution Plan.

1.11 **"Distribution Plan"** shall mean this distribution plan as approved by the Court.

4

1.12    **"Distribution Plan Notice"** shall mean the notice given to Potentially Eligible Claimants of their potential right to participate in the distribution of the Fair Fund and their obligation to file a Proof of Claim Form in order to participate. The Distribution Agent, in consultation with the staff of the Commission, shall design the Distribution Plan Notice, consistent with the provisions of this Distribution Plan, and such notice shall include, at a minimum, a statement that the Fair Fund was established for the benefit of investors who traded in Eligible Securities contemporaneously with Defendants during the Recovery Period, the means of obtaining Claim Packets, instructions for submitting Proof of Claim Forms, and the Claims Bar Date.

1.13    **"Eligible Claimant"** means a Potentially Eligible Claimant who suffered a loss as a result of transactions in Eligible Securities during the Recovery Period and who is determined by the Distribution Agent to be eligible for a Distribution Payment from the Fair Fund. An Eligible Claimant shall not include:

(a) Any director or officer, or former director or officer, of Defendants, or any of Defendants' past or present Affiliates who served in such capacity during the Recovery Period and were directly involved in the conduct detailed in the Complaint;

(b) Any employee or former employee of Defendants or of any of its past or present Affiliates who has been terminated for cause in connection with the violations alleged in the Complaint or any related Commission action, or who was otherwise terminated or has resigned in connection with the violations alleged in the Complaint or any related Commission action;

(c) Any defendant in any action brought by the Commission related to the conduct described in the Complaint or any related Commission action, unless and until such

5

defendant is found not liable in all such civil suits prior to the Claims Bar Date, and proof of the finding(s) is included in such defendant's timely filed Proof of Claim Form;

(d) Any Person who, as of the Claims Bar Date, has been the subject of criminal charges related to the violations alleged in the Complaint or any related Commission action, unless and until such Person is found not guilty prior to the Claims Bar Date, and proof of the finding(s) is included in such Person's timely filed Proof of Claim Form;

(e) Any Affiliates, assigns, creditors, heirs, distributees, spouses, parents, children, or controlled entities of any of the foregoing Persons or entities described in Paragraph 1.13 a-d above.

(f) Any purchaser or assignee of another Person's right to obtain a recovery from the Fair Fund, provided, however, that this provision shall not be construed to exclude those Persons who obtained such a right by gift, inheritance, devise or operation of law; and/or

(g) The Distribution Agent, its employees, and those persons assisting the Distribution Agent in its role as the Distribution Agent.

1.14    "**Eligible Securities**" means Wyeth common stock, Wyeth put and call options, Elan American Depository Shares ("ADS"), Elan ADS put and call options, and Elan ordinary shares.

1.15    "**Fair Fund**" shall refer to the Fair Fund established by the Court's January 26, 2015 Order, together with any interest earned on those funds or any additions thereto as may be provided by future Court order or agreement in related cases or otherwise minus taxes, fees and other expenses incurred by the Fair Fund.

1.16    "**Minimum Distribution Amount**" shall mean the specified dollar amount that a Distribution Payment must equal or exceed in order for a distribution to be made to an Eligible Claimant. The Minimum Distribution Amount shall be $10.00.

6

1.17 **"Person"** shall mean a natural individual as well as a legal entity, such as a corporation, partnership, limited liability company, or governmental entity. All nouns, pronouns, and any variations thereof in this Distribution Plan shall be deemed to refer to the masculine, feminine, neuter, singular, or plural as the context may require.

1.18 **"Plan of Allocation,"** for purposes of this Distribution Plan, shall be the methodology for the calculation of the Total Eligible Loss Amount for each Eligible Claimant set forth in Exhibit A and attached hereto.

1.19 **"Potentially Eligible Claimant"** shall mean a Person, or their lawful successors, identified by the Distribution Agent as having a possible claim to the Fair Fund under this Distribution Plan, or a Person asserting that he or she has a possible claim to the Fair Fund under this Distribution Plan.

1.20 **"Proof of Claim Form"** shall mean the form designed by the Distribution Agent in accordance with this Distribution Plan for the filing of proof of a Potentially Eligible Claimant's claim. The form shall require, at a minimum, sufficient documentation reflecting trades in the Eligible Securities made contemporaneously with Defendants during the Recovery Period and the Tax Identification Number of the Potentially Eligible Claimant.

1.21 **"Pro Rata Share"** is a computation intended to measure Potentially Eligible Claimants' claims against one another. Should the Total Eligible Loss Amount of all Eligible Claimants exceed the Net Fair Fund, the Distribution Agent will distribute funds to the Eligible Claimants based upon a *pro rata* distribution formula. The Distribution Agent shall determine each Eligible Claimant's pro rata share of the Fair Fund based upon each Eligible Claimant's Total Eligible Loss Amount divided by the Total Eligible Loss Amounts of all Eligible Claimants.

7

1.22  **"Recognized Loss"** shall mean the number of shares of each Eligible Security multiplied by the appropriate Recognized Loss Per Share/Option Contract.

1.23  **"Recognized Loss Per Share/Option Contract"** shall mean the amount of loss per share/option contract of an Eligible Security, as calculated pursuant to the Plan of Allocation.

1.24  **"Recognized Gain"** shall mean the number of shares of each Eligible Security multiplied by the appropriate Recognized Gain Per Share/Option Contract.

1.25  **"Recognized Gain Per Share/Option Contract"** shall mean the amount of gain per share/option contract of an Eligible Security, as calculated pursuant to the Plan of Allocation.

1.26  **"Recovery Period,"** for purposes of this Distribution Plan, shall mean the period of time commencing on July 21, 2008, and continuing through the close of trading at 4:00 p.m. EDT on July 29, 2008.

1.27  **"Summary Notice"** shall mean the notice published in print or internet media pursuant to Section 2.11(g) below.  Such notice (the text of which shall be approved by the staff of the Commission) shall include, at a minimum, a statement that the Fair Fund was established for the benefit of investors who traded in the Eligible Securities contemporaneously with Defendants during the Recovery Period, the means of obtaining a Claim Packet, and the Claims Bar Date.

1.28  **"Tax Administrator"** shall mean Damasco & Associates, LLP, the firm appointed by the Court on January 26, 2015.

1.29  **"Total Eligible Loss Amount"** shall mean the sum of Recognized Losses minus the Recognized Gains for all transactions (not less than zero). The Total Eligible Loss Amount will be reduced by the amount of any compensation for the loss that resulted from the conduct described in the complaint in this case that was received from another source (e.g., class action settlement), to the extent it is known to the Distribution Agent.

8

## ARTICLE II

## ADMINISTRATION OF THE CLAIMS PROCEDURE

### A.    General Administrative Provisions

2.1     The Distribution Agent shall oversee the administration of the claims, procedures, and distribution as provided in this Distribution Plan. The Distribution Agent shall review the claim of each Potentially Eligible Claimant and make a determination under the criteria established herein as to the eligibility of each Potentially Eligible Claimant to recover monies and the amount of money to be distributed from the Fair Fund to each Eligible Claimant in accordance with the provisions of this Distribution Plan.

2.2     All claims asserted by a Potentially Eligible Claimant must be verified on the basis of a sworn Proof of Claim Form, executed by the Potentially Eligible Claimant under penalty of perjury under the laws of the United States.

2.3     Any claim asserted by a Potentially Eligible Claimant shall provide adequate documentary evidence to substantiate the claim, including all documentary evidence which the Distribution Agent deems necessary or appropriate, including, but not limited to, available account statements and trade confirmations.

2.4     Claims with 100 or more transactions or on behalf of 20 or more different accounts must be submitted electronically and in the format specified by the Distribution Agent.    The mandatory electronic filing requirements will be available on the Fair Fund website.  Files that do not comply with the required electronic filing format may be rejected.

2.5     In determining the Total Eligible Loss Amount for an Eligible Claimant, the Distribution Agent may aggregate the accounts held by an Eligible Claimant in accordance with the following aggregation rules:

9

(a)     Each Person who is a Potentially Eligible Claimant and would like to aggregate accounts shall so designate in the Proof of Claim Form, *provided* that a Person may only aggregate accounts as follows:

(i)     with respect to an individual Person, such Person may aggregate such Person's account, such Person's parent's, child's, or spouse's (collectively "family") accounts, such Person's or such Person's family retirement accounts, and accounts owned by a corporation or partnership in which such Person or such Person's family is a majority owner, or which is controlled by such Person or such Person's family; and

(ii)     with respect to a Person that is a corporation or partnership, such Person's accounts and such Person's Affiliates' accounts.

(b)     The Distribution Agent in its exclusive discretion may, for purposes of this Section 2.5, but shall not have any obligation to, aggregate accounts not designated for aggregation in a Proof of Claim Form.

(c)     Notwithstanding the aggregation of individual accounts with retirement accounts (*e.g.* IRA accounts) for purposes of this Section 2.5, all payments shall respect the manner in which an account is nominated.  For example, Jane Smith may aggregate her personal accounts with her IRA account to meet the Minimum Distribution Amount.  However, the payment to Jane Smith will be made payable directly to her for her personal account(s) and payable to the trustee or custodian of her IRA for her IRA account.

2.6     The receipt of Eligible Securities during the Recovery Period by gift, inheritance, devise, or operation of law shall not be deemed to be a contemporaneous purchase (or sale in the case of put options) of Eligible Securities during the Recovery Period, nor shall it be deemed an assignment of any claim relating to the purchase of such securities unless specifically provided in

10

the instrument of gift or assignment. However, the recipient of Eligible Securities as a gift or as a distribution from an estate shall be eligible to file a Proof of Claim Form and participate in the distribution of the Fair Fund to the extent the particular donor or decedent as the actual purchaser of Eligible Securities would have been eligible based upon the circumstance of such purchase within the Recovery Period. Such a claim will be computed by using the date and price of the original purchase (or sale in the case of put options) and not the date and price of transfer. However, the donee and the donor may not both make a claim with regard to the same share of an Eligible Security. If both the donor and the donee make such a claim, only the claim filed by the donee will be honored.

2.7     To the extent that an Eligible Claimant, his or her representative, heir, or assign requests a distribution check to be issued or reissued in a different name than the Eligible Claimant (*e.g.*, as the result of a name change because of marriage or divorce, or as the result of death), the Distribution Agent shall honor such request upon receipt of documentation which the Distribution Agent in its sole discretion deems appropriate to substantiate the request.

2.8     Claims on behalf of a retirement plan covered by Section 3(3) of ERISA, 29 U.S.C. § 1002(3), which do not include Individual Retirement Accounts, and such plan's participants, are properly made by the custodian or fiduciary of the plan and not by the plan's participants. The Distribution Agent shall distribute any payments on such claims directly to the custodian or fiduciary of the retirement plan. The distribution shall be accompanied by a list of plan participants and the number of shares owned by each plan participant, if that information is known to the Distribution Agent or provided to the Distribution Agent. The custodian or fiduciary of the retirement plan shall distribute any payments received in a manner that is consistent with its fiduciary duties and the account or plan provisions. With respect to any

11

retirement plan that has been closed prior to the Distribution Agent's identification of Potentially Eligible Claimants, the Distribution Agent shall endeavor to distribute funds directly to the beneficial account holders of such retirement plans if the information required for such a distribution is known to or provided to the Distribution Agent prior to the Claims Bar Date.

2.9     Custodians, trustees, or professionals investing on behalf of more than one Potentially Eligible Claimant in a pooled investment fund or entity will be required to complete a certification, which will require them, at a minimum, to attest that any distribution to the custodian, trustee, or investment professional representing multiple potentially eligible beneficial owners, will be allocated for the benefit of current or former pooled investors and not for the benefit of management.     The certification form will be available upon request from the Distribution Agent and posted on the Fair Fund website.

## B.     Identification of and Notice to Potentially Eligible Claimants

2.10    The Distribution Agent shall, insofar as is practicable, use its best efforts to identify Potentially Eligible Claimants from a review of trading records obtained by the Commission for the period of July 21, 2008 to the close of trading at 4:00 p.m. EDT on July 29, 2008, account information provided by the transfer agent for Elan, registered broker-dealers, investment advisors, and any other commercially reasonable sources available to it.

2.11    Within forty-five (45) days following the entry by the Court of its order approving this Distribution Plan, the Distribution Agent shall:

        (a)     Create a mailing and claims database based upon information in the trading records for Eligible Securities obtained by the Commission staff for the period of July 21, 2008 to the close of trading at 4:00 p.m. EDT on July 29, 2008 and records provided by the transfer

12

agent and/or depository bank for Elan and Wyeth or otherwise obtained by the Distribution Agent;

(b)     Run a National Change of Address search to retrieve updated addresses for all records in the database, thereby ensuring updated mailing information for Potentially Eligible Claimants;

(c)     Design and submit a Claim Packet, including a Distribution Plan Notice and a Claim Form, to the Commission staff for review and approval;

(d)     Establish     and     maintain     a     Fair     Fund     website,     located at www.CRIntrinsicFairFund.com, from which each Potentially Eligible Claimant may obtain a copy of the Distribution Plan Notice or the approved Distribution Plan, download a copy of the Claim Packet, request a Claim Packet by mail and obtain information regarding the claims process and eligibility requirements.  The Distribution Agent will also establish a link to such a website from its own website, www.gardencitygroup.com/cases;

(e)     Provide a copy of the Distribution Plan Notice to the Commission staff and request that the Commission staff establish a link to the CR Intrinsic Fair Fund's website on the Information for Harmed Investors page on the Commission's website, www.sec.gov;

(f)     Establish a toll-free telephone number by which Potentially Eligible Claimants may call and speak to a live representative of the Distribution Agent during its regular business hours, 8:30 to 5:00 p.m., Eastern Standard Time, or, outside of such hours, to hear pre-recorded information about the Fair Fund.  The Distribution Agent will advise the Commission staff of the toll-free telephone number.  The Distribution Agent will also establish and maintain a traditional mailing address and an email address to enable Potentially Eligible Claimants to correspond with the Distribution Agent;

13

(g)     Publish a copy of a Summary Notice, approved by Commission staff, on a single occasion in the *Investor's Business Daily* and disseminate the Summary Notice via PRNewswire and UK and Ireland Newsline once a week for three consecutive weeks within five (5) days of the date of the mailing of Claim Packets to Potentially Eligible Claimants; and

(h)     Mail by United States First Class Mail a Claim Packet to each Potentially Eligible Claimant known to the Distribution Agent.

2.12   The Distribution Agent will mail notices to the Distribution Agent's list of banks, brokers, and other nominees, as well as any other institutions identified during the outreach process, that may have records of purchasers (or sellers in the case of put options) of Eligible Securities during the Relevant Period.  The Distribution Agent will request that these entities, to the extent that they were record holders for beneficial owners of the Eligible Securities:

(a)     Notify the respective beneficial owners within fourteen (14) days of receipt of the Distribution Agent's notice so that beneficial owners may timely file a claim.  The burden will be on the nominee holders to ensure the Claim Packets and other relevant materials are properly disseminated to their customers; and/or

(b)     Provide the Distribution Agent a list of last known names and addresses for all beneficial owners for whom the record holders purchased (or sold in the case of put options) Eligible Securities during the Relevant Period so that the Distribution Agent can communicate with them directly.

2.13   The Distribution Agent shall promptly provide a Claim Packet to any Potentially Eligible Claimant who so requests electronically, in writing, or by telephone, as set forth in the Distribution Plan Notice.

2.14    To avoid being barred from asserting a claim, on or before the Claims Bar Date, each Potentially Eligible Claimant must submit to the Distribution Agent a properly completed Proof of Claim Form reflecting such Potentially Eligible Claimant's claim, together with all required supporting documentation.  The Distribution Agent shall have the authority, after consultation with the Commission staff, on a case-by-case basis, to extend the Claims Bar Date and waive technical claim deficiencies and approve claims.  Where the Claims Bar Date is extended for one or more Potentially Eligible Claimants by the Distribution Agent, such extension shall constitute the Claims Bar Date for such Potentially Eligible Claimants.  Unless otherwise determined by the Distribution Agent, in consultation with the Commission staff, and for good cause shown, any Potentially Eligible Claimant who does not file a properly completed and documented Proof of Claim Form, including the Potentially Eligible Claimant's Tax Identification Number, so that such completed form and documentation are postmarked by (or received by the Distribution Agent if not sent by U.S. Mail) on or before the Claims Bar Date (*see* Section 1.3 above), shall be barred from asserting a claim against the  Fair Fund or the Distribution Agent.  The burden shall be upon the Potentially Eligible Claimant to ensure that his or her Proof of Claim Form has been properly and timely received by the Distribution Agent.

2.15    A claim will not be deemed submitted unless the Potentially Eligible Claimant receives an "Acknowledgement Postcard" or an electronic acknowledgement from the Distribution Agent.  The Acknowledgement Postcard or the electronic acknowledgement shall be the official acknowledgement that the Distribution Agent has received and will review the claim.

### C.    Notification of Claims Determination, Including Notice of Deficient Claims and Opportunity to Cure

2.16    The Distribution Agent shall review each Proof of Claim Form received to determine the validity and amount of such Potentially Eligible Claimant's Total Eligible Loss Amount.  Each

Potentially Eligible Claimant shall have the burden of proof to establish the validity and amount of his or her claim, and that he or she qualifies as an Eligible Claimant; and the Distribution Agent shall have the right to request, and the Potentially Eligible Claimant shall have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent. The Potentially Eligible Claimant also has the burden of notifying the Distribution Agent of his or her current address and other contact information, and confirming receipt of that information by the Distribution Agent.

2.17   The Distribution Agent shall provide to each Potentially Eligible Claimant whose claim is deficient, in whole or in part, a Claim Deficiency Notice setting forth the reason(s) why the claim is deficient, notify the Potentially Eligible Claimant of the opportunity to cure such deficiency, and provide instructions regarding what is required to cure such deficiency. The Claim Deficiency Notice shall be provided to such affected claimants within sixty (60) days after the Claims Bar Date.

2.18   Any Potentially Eligible Claimant who has received a Claim Deficiency Notice shall have thirty (30) days from the date of the Claim Deficiency Notice to cure any deficiencies identified in the Notice.

2.19   On or before the Claims Determination Date, the Distribution Agent shall mail by United States First Class Mail a Determination Notice to each Potentially Eligible Claimant who has filed a Proof of Claim Form with the Distribution Agent, setting forth the Distribution Agent's conclusions concerning such claim. In the event the claim is denied, the Determination Notice will state the reason for such denial.

2.20   All determinations made by the Distribution Agent in accordance with this Distribution Plan shall be final and not subject to appeal.

16

### D. Payment of Approved Claims

2.21    The Distribution Agent shall distribute the Fair Fund to Eligible Claimants only after all timely submitted Proofs of Claim have been processed and all Potentially Eligible Claimants whose claims have been rejected or disallowed, whether in whole or in part, have been notified and provided the opportunity to cure pursuant to the procedures set forth above and provided that the Distribution Payment to be made to an Eligible Claimant is equal to or exceeds the Minimum Distribution Amount.

### 1. Third Party Review

2.22    To maintain a high-level of quality control, and at the Commission staff's request, the Distribution Agent shall retain an independent outside firm or party, not unacceptable to the Commission staff, to perform an independent review of agreed upon procedures designed to ensure that claims or changes to a claim submitted by a Potentially Eligible Claimant have been accurately processed, calculated, and validated based upon a statistically designed random sample. Upon completion of the independent review, the independent outside firm or party shall provide a report of its findings to the Commission staff in the manner prescribed by the Commission staff. Based upon the results of the review, the Distribution Agent shall correct any individual errors identified and perform database searches or additional procedures to correct any errors that may have occurred during claims processing, and consult on any such corrections or additional procedures with Commission staff.

### 2. Final Payee List

2.23    Within thirty (30) days following the Claims Determination Date, the Distribution Agent shall prepare a list of Eligible Claimants, the amount of the asserted claim of each Eligible Claimant, and the Total Eligible Loss Amount of each Eligible Claimant (*i.e.*, the Final Payee

17

List). The Distribution Agent shall provide the Final Payee List to Commission staff with a reasonable assurances letter as to the completeness and accuracy of the Final Payee List.

2.24     Within forty-five (45) days after receipt and acceptance of the Final Payee List, Commission staff will petition the Court to transfer the entire Fair Fund to the Distribution Agent for distribution to Eligible Claimants pursuant to this Distribution Plan.   In recommending a distributable amount to the Court, the Distribution Agent will retain a prudent reserve to pay any taxes, fees and expenses payable in connection with the Fair Fund, as well as a reasonable contingency for potential unforeseen issues. The Final Payee List shall, upon request, be made available to the Court under seal.

### 3.     Establishment of the Escrow Account

2.25     Prior to disbursement of the Fair Fund, the Distribution Agent will establish accounts described as follows at a U.S. commercial bank ("Bank"), not unacceptable to Commission staff. The Distribution Agent will establish an escrow account (the "Escrow Account") pursuant to an escrow agreement (the "Escrow Agreement") to be provided by Commission staff. The Escrow Account will be established to receive the monies from the Commission and the Fair Fund will be held in the Escrow Account until the time of distribution. The Distribution Agent will also establish a separate deposit account (*e.g.* controlled distribution account, managed distribution account, linked checking and investment account) (the "Distribution Account") for the purpose of funding the Distribution Payments to be distributed to Eligible Claimants. The accounts shall be in the name of and bearing the Employer Identification Number of the Fair Fund as custodian for the distributees of this Distribution Plan. The name of each account will be in the following form:  "SEC v. CR Intrinsic Fair Fund, as custodian for the benefit of investors allocated a

distribution pursuant to the Distribution Plan in SEC v. CR Intrinsic Investors, LLC, et al., Case No.12-CV-8466 (S.D.N.Y.)."

2.26    During the term of the Escrow Agreement, if invested, the Escrow Account shall be invested and reinvested in short-term United States Treasury securities backed by the full faith and credit of the United States Government or an agency thereof, of a type and term necessary to meet the cash liquidity requirements for payments to Eligible Claimants, tax obligations, and/or fees and expenses that may accrue, including investment or reinvestment in a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit, or money market mutual funds registered under the Investment Company Act of 1940 that invest 100% of their assets in direct obligations of the United States Government.

2.27    In consultation with the staff of the Commission, the Distribution Agent will work with the Bank on an ongoing basis to determine an allocation of funds between the Escrow Account and Distribution Account that will preserve earnings, if possible, while providing maximum protection for the Fair Fund.

2.28    Upon receipt of the monies, the Distribution Agent shall sign and file a receipt acknowledging the receipt of the funds with the Court and supply a copy of the receipt to counsel for the Commission in this matter within ten (10) days of receipt of the monies.

2.29    Upon transfer from the CRIS account, the assets of the Fair Fund will be held in the Escrow Account, separate from Bank assets, until the presentation of checks. All Fair Fund checks presented for payment or electronic transfers will be subject to "positive pay" controls before they are honored by the Bank. The "positive pay" system provides protection against fraud arising from counterfeit or altered checks. The "positive pay" system will require, at a minimum, confirmation by the Bank that all checks presented for payment match the identifiers

19

and amounts on the payee list prior to honoring such checks. In each instance, funds will be transferred from the Escrow Account to the Distribution Account on the Bank's confirmation that a presented check matches the relevant "positive pay" criteria.

2.30    The Distribution Agent shall provide copies of bank and/or investment statements on any accounts established by the Distribution Agent to the Tax Administrator on a monthly basis and shall assist the Tax Administrator in obtaining mid-cycle statements, as necessary.

### E.    Distribution

2.31    The Fair Fund will be distributed to Eligible Claimants as provided under the terms of the Distribution Plan. An Eligible Claimant's Total Eligible Loss Amount, as determined in accordance with the Plan of Allocation contained in Exhibit A to this Distribution Plan, will be used to determine the amount of their Distribution Payment.

2.32    Should the total amount of the Total Eligible Loss Amount of all Eligible Claimants exceed the Net Fair Fund, the Distribution Agent will distribute funds to the Eligible Claimants based upon a *pro rata* distribution formula. This formula will be the fraction of the Total Eligible Loss Amount of each Eligible Claimant divided by the aggregate Total Eligible Loss Amounts of all Eligible Claimants. No Distribution Payment will be made to an otherwise Eligible Claimant unless the amount to be paid equals or exceeds $10.00.

2.33    Following the Court's approval of the Commission's petition for the authority to distribute the Fair Fund to Eligible Claimants as provided for in this Distribution Plan, the Distribution Agent shall commence the distributions to all Eligible Claimants as promptly as possible following the transfer of funds from the CRIS account to the Escrow Account at the Bank.

20

2.34    All Fair Fund checks issued to Eligible Claimants by the Distribution Agent shall bear a stale date of ninety (90) days.  Accordingly, checks that are not negotiated within this period shall be voided and the issuing financial institution shall be instructed to stop payment on those checks.  Where an Eligible Claimant's check has not been negotiated within the ninety (90) day period and has been voided by the Distribution Agent, that Eligible Claimant's claim shall be extinguished upon the occurrence of the stale date.  All such funds will remain in the Fair Fund.

2.35    All Distribution Payments shall be preceded or accompanied by a communication, submitted to the staff of the Commission and the Tax Administrator for review and approval, that includes, as appropriate:

(a)    A statement characterizing the distribution;

(b)    A statement that the tax treatment of the distribution is the responsibility of each recipient and that the recipient should consult his or her tax advisor for advice regarding the tax treatment of the distribution;

(c)    A statement that checks will be void after ninety (90) days; and

(d)    The name of a person or entity to contact, if the Eligible Claimant has any questions regarding the distribution.

2.36    The Fair Fund distribution checks, on their face, or the accompanying mailing shall clearly indicate that the money is being distributed from a Fair Fund established by the Commission to compensate investors for harm as a result of their trades in the Eligible Securities made    contemporaneously    with    Defendants    during    the    Recovery    Period.

## ARTICLE III

## UNCASHED AND REISSUED CHECKS

21

3.1     The Distribution Agent shall reissue checks to Eligible Claimants, upon the receipt of a valid, written request from the Eligible Claimant.  Such reissued checks will be void at the later of ninety (90) days from the issuance of the original check or thirty (30) days from the reissuance, and in no event will a check be reissued after ninety (90) from the date of the original issuance.

3.2     The Distribution Agent shall use all reasonable commercially available resources to locate all Eligible Claimants whose checks are returned to the Distribution Agent as undeliverable by the U.S. Postal Service, and will reissue checks to Eligible Claimants who are located so long as the new address is received within ninety (90) days post-distribution. However, Eligible Claimants have the burden of providing the Distribution Agent with any changes to their mailing address.

3.3     In addition, the Distribution Agent will make reasonable efforts to contact Eligible Claimants to follow up on the status of uncashed Distribution Payments over $100 (other than those returned as "undeliverable") and take appropriate action to follow up on the status of uncashed checks at the request of Commission staff.  The Distribution Agent may reissue such checks, subject to the time limits detailed herein.

## ARTICLE IV

## TERMINATION OF FAIR FUND

4.1     Once all Distribution Payments have been negotiated or voided, any funds remaining in the Escrow and Distribution Accounts will be transferred to the Commission.  Once the funds, if any, are returned to the Commission, no additional payments shall be made whatsoever to Eligible Claimants.

22

4.2     Upon final distribution of the funds, the Distribution Agent shall make arrangement for the final payment of taxes, and any remaining fees and expenses.

4.3     The Distribution Agent shall also provide to Commission staff and file with the Court for approval a final report and final account statement in a format to be provided by Commission staff, when the administration of the Fair Fund is completed.   The final report shall include, among other things, a final accounting of all monies received, earned, spent, and distributed in connection with the administration of the Distribution Plan and shall be compiled in coordination with the Tax Administrator.

4.4     If, after the Distribution Agent makes the distribution to Eligible Claimants, funds remain in the Fair Fund after payment of all outstanding taxes, fees and expenses, within thirty (30) days after the Commission's submission of the final accounting of the distribution to the Court, the Commission shall inform the Court and Pfizer, Inc. ("Pfizer"), the acquirer of Wyeth, of the amount of the Remaining Funds, if any, and declare the Commission's position as to how the Remaining Funds shall be distributed, and Pfizer shall have thirty (30) days to object or otherwise respond to the SEC's position.[7]

4.5     The Fair Fund shall be eligible for termination, and the Distribution Agent eligible for discharge, after all of the following have occurred: (1) the final fund accounting has been submitted to and approved by the Court; (2) all taxes, fees and expenses have been paid; and (3) all remaining funds (if any) have been paid as approved by the Court after the Court has reviewed and considered the Commission's and Pfizer's positions with regard to such funds as set forth in Paragraph 4.4.

---

[7] Stipulation and Order resolving objection of Pfizer, Inc. to Plaintiff's Motion to Establish a Fair Fund for Investor Victims and Appoint a Tax Administrator, SEC v. CR Intrinsic Investors, LLC, et al., 12 Civ. 8466 (VM), filed December 23, 2014 (hereinafter "Stipulation").

4.6     The Distribution Agent will maintain all documents, including documents in any media, six (6) years after approval of the final fund accounting and thereafter will transfer the documents to the Commission, pursuant to Commission direction.

4.7     The Distribution Agent will shut down the toll-free number and website established specifically for the administration of the Fair Fund upon approval of the final fund accounting by the Court.

## ARTICLE V

### RESPONSIBILITIES OF THE TAX ADMINISTRATOR

5.1     The Fair Fund is a Qualified Settlement Fund within the meaning of the regulations issued under Section 468B(g) of the Internal Revenue Code of 1986, as amended. The Tax Administrator is the administrator of such Qualified Settlement Fund, for purposes of Treas. Reg. § 1.468B-2(k)(3)(I), and shall satisfy the tax related administrative requirements imposed by Treas. Reg. § 1.468B-2, including, but not limited to:

        (a)     Obtaining a taxpayer identification number;

        (b)     Submitting requests for funds necessary for the timely payment of all applicable taxes, making timely payment of taxes for which the Tax Administrator has received funds, and filing of applicable returns; and

        (c)     Fulfilling any information, reporting, or withholding requirements required for distributions from the Fair Fund.

5.2     The Distribution Agent shall cooperate with the Tax Administrator in providing any information necessary to ensure income tax compliance.

## ARTICLE VI

24

## PAYMENT OF COSTS, FEES, AND TAXES,
## AND FILING OF REPORTS AND ACCOUNTINGS

6.1    Pursuant to the Order to Appoint a Distribution Agent, entered by the Court on April 22, 2015, the Distribution Agent's reasonable fees and expenses associated with distributing the Fair Fund shall be paid from the Fair Fund upon approval by the Court.  Similarly, pursuant to the Order to Establish a Fair Fund for Investor Victims and Appoint a Tax Administrator, entered by the Court on January 26, 2015, all taxes and reasonable Tax Administrator fees shall be paid from the Fair Fund upon approval by the Court.

6.2    The Distribution Agent shall provide to Commission staff and file with the Court a progress report and a quarterly account statement in a format to be provided by Commission staff, within forty-five (45) days of the Court approval of this Distribution Plan, and shall provide to Commission staff and file additional reports and quarterly account statements within twenty (20) days after the end of every quarter thereafter.

6.3    The progress report and quarterly account statement will inform the Court, and the Commission staff, of the activities and status of the Fair Fund during the relevant reporting period, and once funds are transferred to the Distribution Agent will specify, at a minimum:

        (a)    The location of the account(s) comprising the Fair Fund; and

        (b)    An interim accounting of all monies in the Fair Fund as of the most recent month-end, including the value of the account(s), all monies earned or received into the account(s), funds distributed to Eligible Claimants under this Distribution Plan, and any monies expended from the Fair Fund to satisfy any fees, costs, taxes and other expenses incurred in the implementation of this Distribution Plan.

6.4    Within ninety (90) days after the check reissuance period described in Paragraphs 3.1 and 3.2 have been completed, the Distribution Agent shall also provide to the Commission staff and

25

file with the Court when its duties are completed a final report and final account statement on a form to be provided by the Commission staff. The final report shall include, among other things, a final accounting of all monies received, earned, spent, and distributed in connection with the administration of this Distribution Plan.

## ARTICLE VII

## OTHER RIGHTS AND POWERS

7.1    To carry out the purposes of this Distribution Plan, the Distribution Agent is authorized to make non-material changes to the Distribution Plan  if agreed upon by the Distribution Agent and the staff of the Commission.   Material changes to this Distribution Plan may only be implemented by the Distribution Agent after consultation with, and consent of, Commission staff and approval by the Court.

7.2    The Distribution Agent may extend any procedural deadline contained in this Distribution Plan for good cause shown, if agreed upon by the Commission staff.

7.3    The Distribution Agent is entitled to rely on all outstanding rules of law and court orders. The Distribution Agent shall not be liable to anyone, except the Commission on behalf of the Fair Fund, for any action taken or omitted by him in connection with this Distribution Plan, and Potentially Eligible Claimants will have no claims against the Distribution Agent, its employees, agents, and attorneys in connection with this Distribution Plan and the administration of the Fair Fund, and will be deemed enjoined from prosecuting or asserting any such claims, except upon a finding by this Court of misfeasance, gross negligence, or reckless disregard of duty under this Distribution Plan.

7.4    The Distribution Agent is authorized to enter into agreements with financial institutions ("Institutions") as may be appropriate or necessary in the administration of the Fair Fund,

26

provided that such Institutions are not excluded pursuant to other provisions of this Distribution Plan. In connection with such agreements, the Institutions shall be deemed to be agents of the Distribution Agent under this Distribution Plan.

7.5    All proceedings with respect to the administration, processing, and determination of claims and the determination of all related controversies, shall be subject to the exclusive jurisdiction of this Court.

7.6    The Court reserves the right to amend this Distribution Plan from time to time, and retains jurisdiction over this matter for this purpose and for any and all other matters that may arise under or relate to this Distribution Plan.

7.7    Under no circumstances shall the Distribution Agent, its employees or its agents incur any liability to any Person for making a distribution in accordance with the Order of the Court approving the distribution and the schedules of Eligible Claimants, and their Eligible Loss Amounts as approved by the Court, and all Persons are enjoined from taking any action in contravention of this provision.  Upon receipt and acceptance by an Eligible Claimant of a distribution from the Fair Fund, such Eligible Claimant shall be deemed to have released all claims that such Eligible Claimant may have against it.

7.8    The Distribution Agent, its employees, agents, and attorneys in connection with this Distribution Plan and the administration of the Fair Fund, and shall be deemed enjoined from prosecuting or asserting any such claims.

7.9    The submission of the Proof of Claim Form and the receipt and acceptance of a distribution by an Eligible Claimant shall not affect an Eligible Claimant's rights and claims against any party (other than the Distribution Agent), including, but not limited to, Defendants and Defendants' past or present directors, officers, employees, advisers, and agents.

27

## EXHIBIT A

## PLAN OF ALLOCATION

### GENERAL PROVISIONS

### To Receive a Distribution from the Fair Fund, a Potentially Eligible Claimant MUST:

1. Have purchased (or sold in the case of put options) one or more of the Eligible Securities during the Recovery Period and held those securities after the close of trading at 4:00 p.m. EDT on July 29, 2008;

2. Complete and sign a Proof of Claim Form and supply all required documentation; and

3. Submit the completed Proof of Claim Form and required documentation so that it is postmarked by (or received by the Distribution Agent if not sent by U.S. Mail) on or before the Claims Bar Date.

### Each Proof of Claim Form Must Separately Set Forth:

1. The Potentially Eligible Claimant's position in each of the Eligible Securities as of the close of trading on July 20, 2008, the day before the first day of the Recovery Period;

2. Each transaction, *i.e.,* purchase or sale made during the Recovery Period of each Eligible Security; and

3. The Potentially Eligible Claimant's position in each of the Eligible Securities as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the last day of the Recovery Period.

### CALCULATION OF RECOGNIZED LOSS PER SHARE/OPTION CONTRACT

### Purchases of Wyeth Common Stock

After application of the FIFO methodology, for shares of Wyeth common stock purchased during the Recovery Period, and still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Share is $5.56. For shares purchased and sold during the Recovery Period, the Recognized Loss Per Share is $0.00.

### Purchases of Wyeth Call Options

After application of the FIFO methodology, for shares of Wyeth Call Options purchased during the Recovery Period, and still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Option Contract is the amount listed on Table A multiplied by 100. For Call Options purchased and sold, exercised or expired during the Recovery Period, the Recognized Loss Per Option Contract is $0.00.

1

**Sales of Wyeth Put Options**

After application of the FIFO methodology, for shares of Wyeth Put Options sold (written) during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Option Contract is the amount listed on Table A multiplied by 100. For Put Options sold and re-purchased, assigned, or expired during the Recovery Period, the Recognized Loss Per Option Contract is \$0.00.

**Purchases of Elan ADSs**

After application of the FIFO methodology, for shares of Elan ADSs purchased during the Recovery Period, and still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Share is \$14.55. For shares purchased and sold during the Recovery Period, the Recognized Loss Per Share is \$0.00.

**Purchases of Elan ADS Call Options**

After application of the FIFO methodology, for shares of Elan ADS Call Options purchased during the Recovery Period, and still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Option Contract is the amount listed on Table B multiplied by 100. For Call Options purchased and sold exercised, or expired during the Recovery Period, the Recognized Loss Per Option Contract is \$0.00.

**Sales of Elan ADS Put Options**

After application of the FIFO methodology, for shares of Elan ADS Put Options sold (written) during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Option Contract is the amount listed on Table B multiplied by 100. For Put Options sold and re-purchased, assigned or expired during the Recovery Period, the Recognized Loss Per Option Contract is \$0.00.

**Purchases of Elan Ordinary Shares**

After application of the FIFO methodology, for shares of Elan ordinary shares purchased during the Recovery Period, and still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Loss Per Share is \$14.55. For shares purchased and sold during the Recovery Period, the Recognized Loss Per Share is \$0.00.

## CALCULATION OF RECOGNIZED GAIN PER SHARE/OPTION CONTRACT

**Short Sales of Wyeth Common Stock**

After application of the FIFO methodology, for shares of Wyeth common stock sold short during the Recovery Period, and the short position was still open as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Share is \$5.56. For shares sold short and purchased during the Recovery Period, the Recognized Gain Per Share is \$0.00.

**Sales of Wyeth Call Options**

After application of the FIFO methodology, for shares of Wyeth Call Options sold during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Option Contract is the amount listed on Table A multiplied by 100. For Call Options sold and re-purchased, assigned, or expired during the Recovery Period, the Recognized Gain Per Option Contract is $0.00.

**Purchases of Wyeth Put Options**

After application of the FIFO methodology, for shares of Wyeth Put Options purchased during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Option Contract is the amount listed on Table A multiplied by 100. For Put Options purchased and sold, exercised, or expired during the Recovery Period, the Recognized Gain Per Option Contract is $0.00.

**Short Sales of Elan ADSs**

After application of the FIFO methodology, for shares of Elan ADSs sold short during the Recovery Period, and the short position was still open as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Share is $14.55. For shares sold short and purchased during the Recovery Period, the Recognized Gain Per Share is $0.00.

**Sales of Elan ADS Call Options**

After application of the FIFO methodology, for shares of Elan ADS Call Options sold during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Option Contract is the amount listed on Table B multiplied by 100. For Call Options sold and re-purchased, assigned, or expired during the Recovery Period, the Recognized Gain Per Option Contract is $0.00.

**Purchases of Elan ADS Put Options**

After application of the FIFO methodology, for shares of Elan ADS Put Options purchased during the Recovery Period that were still held as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Option Contract is the amount listed on Table B multiplied by 100. For Put Options purchased and sold, exercised, or expired during the Recovery Period, the Recognized Gain Per Option Contract is $0.00.

**Short Sales of Elan Ordinary Shares**

After application of the FIFO methodology, for shares of Elan ordinary shares sold short during the Recovery Period, and the short position was still open as of the close of trading at 4:00 p.m. EDT on July 29, 2008, the Recognized Gain Per Share is $14.55. For shares sold short and purchased during the Recovery Period, the Recognized Gain Per Share is $0.00.

## TREATMENT OF SHORT POSITIONS AT THE BEGINNING OF THE RECOVERY PERIOD

For an investor who held a short position at the beginning of the Recovery Period, purchases of shares of Eligible Securities during the Recovery Period will be matched, in chronological order, against the short position until the short position has been exhausted. The Recognized Loss per Share for shares purchased during the Recovery Period to cover short positions held at the beginning of the Recovery Period will be calculated at $5.56 for Wyeth common stock, and $14.55 for Elan ADS and common shares. Then the FIFO methodology will be applied to subsequent purchases and sales during the Recovery Period and Recognized Loss per Share on purchases will be calculated as above.

For an investor who held a short position in call options at the beginning of the Recovery Period, purchases of these option contracts during the Recovery Period will be matched, in chronological order, against the short position until the short position has been exhausted. The Recognized Loss per Option Contract for call options purchased during the Recovery Period to cover short positions held at the beginning of the Recovery Period will be calculated at the inflation amounts set forth Tables A and B attached hereto. Then the FIFO methodology will be applied to subsequent purchases and sales during the Recovery Period and Recognized Loss per Option Contracts on purchases will be calculated as above.

For an investor who held a long position in put options at the beginning of the Recovery Period, sales of these option contracts during the Recovery Period will be matched, in chronological order, against the long position until the long position has been exhausted. The Recognized Loss per Option Contract for put options sold during the Recovery Period to cover long positions held at the beginning of the Recovery Period will be calculated at the inflation amounts set forth Tables A and B attached hereto. Then the FIFO methodology will be applied to subsequent purchases and sales during the Recovery Period and Recognized Loss per Share on purchases will be calculated as above.

## ACQUISITION BY GIFT, INHERITANCE OR OPERATION OF LAW

Subject to the limitations set forth in the Distribution Plan, if a Potentially Eligible Claimant acquired the Eligible Security by way of gift, inheritance, devise or operation of law, such claim will be computed using the date and price of the original purchase and not the date and price of transfer, gift or inheritance. To the extent those shares were originally purchased prior to commencement of the Recovery Period, the Recognized Loss for that acquisition shall be $0.00.

## PRO RATA CALCULATION

Should the Total Eligible Loss Amount of all Eligible Claimants exceed the Net Fair Fund, the Distribution Agent will distribute funds to the Eligible Claimants based upon a pro-rata distribution formula. The Fund Administrator shall determine each Eligible Claimant's pro rata share of the Fair Fund based upon each Eligible Claimant's Total Eligible Loss Amount divided by the Total Eligible Loss Amounts of all Eligible Claimants.

## USE OF "FIFO" METHODOLOGY FOR COMPUTATION OF RECOGNIZED LOSSES FOR ELIGIBLE CLAIMANTS WHO MADE MULTIPLE TRANSACTIONS IN ELIGIBLE SECURITIES DURING THE RECOVERY PERIOD

For Potentially Eligible Claimants who made multiple purchases, acquisitions or sales of the Eligible Securities during the Recovery Period, the sales of shares during the Recovery Period will be matched in chronological order first against the claimant's closing position on the day before the first day of the Recovery Period, until that day's closing position has been exhausted; then remaining sales during the Recovery Period will be matched in chronological order against purchases or acquisitions made during the Recovery Period beginning with the earliest purchase or acquisition. Purchases and sales of eligible securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

## COMPUTATION OF THE ELIGIBLE LOSS AMOUNT FOR EACH ELIGIBLE CLAIMANT

The Eligible Loss Amount will be calculated for each purchase of each Eligible Security (or sale of put options) that occurred during the Recovery Period, listed in the Proof of Claim Form, and for which adequate documentation is provided. The Eligible Loss Amount for each Eligible Security is calculated by (i) multiplying the number of shares by the appropriate Recognized Loss Per Share (Recognized Loss) minus (ii) the number of shares multiplied by the appropriate Recognized Gain Per Share (Recognized Gain). An Eligible Claimant's Total Eligible Loss Amount equals the sum of Recognized Losses minus the Recognized Gains for all transactions (not less than $0.00).

**Loss Amount per Wyeth Option**
**(Per Underlying Share - One Hundred Shares of Common Stock**
**Underlying Each Option Contract)**

| Expiration Date | Strike Price | Calls | Puts |
|---|---|---|---|
| 8/16/2008 | $32.50 | $5.54 | $0.01 |
| 8/16/2008 | $35.00 | $5.46 | $0.10 |
| 8/16/2008 | $37.50 | $5.06 | $0.49 |
| 8/16/2008 | $40.00 | $4.11 | $1.44 |
| 8/16/2008 | $42.50 | $2.74 | $2.81 |
| 8/16/2008 | $45.00 | $1.45 | $4.11 |
| 8/16/2008 | $47.50 | $0.60 | $4.95 |
| 8/16/2008 | $50.00 | $0.20 | $5.36 |
| 8/16/2008 | $52.50 | $0.05 | $5.50 |
| 8/16/2008 | $55.00 | $0.01 | $5.54 |
| 9/20/2008 | $35.00 | $5.03 | $0.51 |
| 9/20/2008 | $37.50 | $4.47 | $1.07 |
| 9/20/2008 | $40.00 | $3.70 | $1.84 |
| 9/20/2008 | $42.50 | $2.84 | $2.70 |
| 9/20/2008 | $45.00 | $2.01 | $3.53 |
| 9/20/2008 | $47.50 | $1.32 | $4.22 |
| 9/20/2008 | $50.00 | $0.81 | $4.73 |
| 9/20/2008 | $52.50 | $0.47 | $5.07 |
| 9/20/2008 | $55.00 | $0.25 | $5.29 |
| 9/20/2008 | $60.00 | $0.06 | $5.48 |
| 10/18/2008 | $27.50 | $5.49 | $0.04 |
| 10/18/2008 | $30.00 | $5.39 | $0.14 |
| 10/18/2008 | $32.50 | $5.17 | $0.36 |
| 10/18/2008 | $35.00 | $4.79 | $0.74 |
| 10/18/2008 | $37.50 | $4.25 | $1.28 |
| 10/18/2008 | $40.00 | $3.59 | $1.94 |
| 10/18/2008 | $42.50 | $2.88 | $2.65 |
| 10/18/2008 | $45.00 | $2.20 | $3.33 |
| 10/18/2008 | $47.50 | $1.61 | $3.92 |
| 10/18/2008 | $50.00 | $1.12 | $4.41 |
| 10/18/2008 | $52.50 | $0.76 | $4.77 |
| 10/18/2008 | $55.00 | $0.49 | $5.04 |
| 10/18/2008 | $60.00 | $0.19 | $5.34 |
| 10/18/2008 | $65.00 | $0.07 | $5.46 |
| 1/17/2009 | $25.00 | $5.40 | $0.10 |
| 1/17/2009 | $30.00 | $5.06 | $0.43 |
| 1/17/2009 | $35.00 | $4.38 | $1.11 |
| 1/17/2009 | $40.00 | $3.46 | $2.03 |
| 1/17/2009 | $42.50 | $2.97 | $2.52 |
| 1/17/2009 | $45.00 | $2.50 | $2.99 |
| 1/17/2009 | $47.50 | $2.07 | $3.43 |
| 1/17/2009 | $50.00 | $1.68 | $3.82 |
| 1/17/2009 | $55.00 | $1.06 | $4.44 |
| 1/17/2009 | $60.00 | $0.64 | $4.86 |
| 1/17/2009 | $65.00 | $0.37 | $5.13 |
| 1/17/2009 | $70.00 | $0.21 | $5.29 |
| 1/17/2009 | $75.00 | $0.12 | $5.38 |
| 1/17/2009 | $80.00 | $0.06 | $5.43 |
| 1/16/2010 | $25.00 | $4.89 | $0.47 |
| 1/16/2010 | $30.00 | $4.46 | $0.90 |
| 1/16/2010 | $35.00 | $3.95 | $1.41 |
| 1/16/2010 | $40.00 | $3.41 | $1.95 |
| 1/16/2010 | $45.00 | $2.88 | $2.48 |
| 1/16/2010 | $50.00 | $2.40 | $2.96 |
| 1/16/2010 | $55.00 | $1.98 | $3.38 |
| 1/16/2010 | $60.00 | $1.62 | $3.75 |
| 1/16/2010 | $65.00 | $1.31 | $4.05 |
| 1/16/2010 | $70.00 | $1.06 | $4.30 |
| 1/16/2010 | $75.00 | $0.85 | $4.51 |
| 1/16/2010 | $80.00 | $0.69 | $4.68 |

| 1/16/2010 | $100.00 | $0.29 | $5.08 |

**TABLE B**

Loss Amount per Elan ADR Option
(Per Underlying Share  - One Hundred Shares of ADRs Underlying
Each Option Contract)

| Expiration Date | Strike Price | Calls | Puts |
|---|---|---|---|
| 8/16/2008 | $20.00 | $12.91 | $1.64 |
| 8/16/2008 | $22.50 | $11.02 | $3.53 |
| 8/16/2008 | $25.00 | $8.75 | $5.80 |
| 8/16/2008 | $28.00 | $6.02 | $8.53 |
| 8/16/2008 | $29.00 | $5.18 | $9.37 |
| 8/16/2008 | $30.00 | $4.40 | $10.15 |
| 8/16/2008 | $31.00 | $3.68 | $10.87 |
| 8/16/2008 | $32.00 | $3.04 | $11.51 |
| 8/16/2008 | $33.00 | $2.47 | $12.08 |
| 8/16/2008 | $34.00 | $1.98 | $12.57 |
| 8/16/2008 | $35.00 | $1.56 | $12.99 |
| 8/16/2008 | $36.00 | $1.22 | $13.33 |
| 8/16/2008 | $37.00 | $0.94 | $13.61 |
| 8/16/2008 | $38.00 | $0.71 | $13.84 |
| 8/16/2008 | $39.00 | $0.53 | $14.02 |
| 8/16/2008 | $40.00 | $0.40 | $14.15 |
| 8/16/2008 | $45.00 | $0.07 | $14.48 |
| 8/16/2008 | $50.00 | $0.01 | $14.54 |
| 9/20/2008 | $20.00 | $12.12 | $2.43 |
| 9/20/2008 | $22.50 | $10.54 | $4.01 |
| 9/20/2008 | $25.00 | $8.81 | $5.74 |
| 9/20/2008 | $28.00 | $6.77 | $7.78 |
| 9/20/2008 | $29.00 | $6.13 | $8.42 |
| 9/20/2008 | $30.00 | $5.53 | $9.02 |
| 9/20/2008 | $31.00 | $4.97 | $9.58 |
| 9/20/2008 | $32.00 | $4.45 | $10.10 |
| 9/20/2008 | $33.00 | $3.96 | $10.59 |
| 9/20/2008 | $34.00 | $3.52 | $11.03 |
| 9/20/2008 | $35.00 | $3.11 | $11.44 |
| 9/20/2008 | $36.00 | $2.74 | $11.81 |
| 9/20/2008 | $37.00 | $2.41 | $12.14 |
| 9/20/2008 | $38.00 | $2.11 | $12.44 |
| 9/20/2008 | $39.00 | $1.85 | $12.70 |
| 9/20/2008 | $40.00 | $1.61 | $12.94 |
| 9/20/2008 | $45.00 | $0.79 | $13.76 |
| 10/18/2008 | $5.00 | $14.55 | $0.00 |
| 10/18/2008 | $10.00 | $14.51 | $0.04 |
| 10/18/2008 | $15.00 | $13.82 | $0.73 |
| 10/18/2008 | $16.00 | $13.53 | $1.02 |
| 10/18/2008 | $17.00 | $13.17 | $1.38 |
| 10/18/2008 | $18.00 | $12.75 | $1.80 |
| 10/18/2008 | $19.00 | $12.29 | $2.26 |
| 10/18/2008 | $20.00 | $11.78 | $2.77 |
| 10/18/2008 | $21.00 | $11.24 | $3.31 |
| 10/18/2008 | $22.00 | $10.67 | $3.88 |
| 10/18/2008 | $23.00 | $10.08 | $4.47 |
| 10/18/2008 | $24.00 | $9.49 | $5.06 |
| 10/18/2008 | $25.00 | $8.89 | $5.66 |
| 10/18/2008 | $26.00 | $8.30 | $6.25 |
| 10/18/2008 | $27.00 | $7.72 | $6.83 |
| 10/18/2008 | $28.00 | $7.16 | $7.39 |
| 10/18/2008 | $30.00 | $6.10 | $8.45 |
| 10/18/2008 | $33.00 | $4.70 | $9.85 |
| 10/18/2008 | $34.00 | $4.29 | $10.26 |
| 10/18/2008 | $35.00 | $3.91 | $10.64 |
| 10/18/2008 | $36.00 | $3.55 | $11.00 |
| 10/18/2008 | $37.00 | $3.22 | $11.33 |
| 10/18/2008 | $38.00 | $2.92 | $11.63 |
| 10/18/2008 | $39.00 | $2.64 | $11.91 |
| 10/18/2008 | $40.00 | $2.39 | $12.16 |
| 10/18/2008 | $45.00 | $1.42 | $13.13 |
| 10/18/2008 | $50.00 | $0.82 | $13.73 |
| 10/18/2008 | $55.00 | $0.47 | $14.08 |

**Loss Amount per Elan ADR Option**
**(Per Underlying Share - One Hundred Shares of ADRs Underlying**
**Each Option Contract)**

| Expiration Date | Strike Price | Calls | Puts |
|---|---|---|---|
| 1/17/2009 | $2.50 | $14.55 | $0.00 |
| 1/17/2009 | $5.00 | $14.55 | $0.00 |
| 1/17/2009 | $7.50 | $14.49 | $0.06 |
| 1/17/2009 | $10.00 | $14.30 | $0.25 |
| 1/17/2009 | $12.50 | $13.87 | $0.68 |
| 1/17/2009 | $15.00 | $13.20 | $1.35 |
| 1/17/2009 | $17.50 | $12.33 | $2.22 |
| 1/17/2009 | $20.00 | $11.33 | $3.22 |
| 1/17/2009 | $22.50 | $10.27 | $4.28 |
| 1/17/2009 | $25.00 | $9.20 | $5.35 |
| 1/17/2009 | $26.00 | $8.78 | $5.77 |
| 1/17/2009 | $27.00 | $8.36 | $6.19 |
| 1/17/2009 | $28.00 | $7.96 | $6.59 |
| 1/17/2009 | $29.00 | $7.57 | $6.98 |
| 1/17/2009 | $30.00 | $7.19 | $7.36 |
| 1/17/2009 | $33.00 | $6.13 | $8.42 |
| 1/17/2009 | $34.00 | $5.80 | $8.75 |
| 1/17/2009 | $35.00 | $5.49 | $9.06 |
| 1/17/2009 | $36.00 | $5.19 | $9.36 |
| 1/17/2009 | $37.00 | $4.90 | $9.65 |
| 1/17/2009 | $38.00 | $4.63 | $9.92 |
| 1/17/2009 | $39.00 | $4.38 | $10.17 |
| 1/17/2009 | $40.00 | $4.13 | $10.42 |
| 1/17/2009 | $45.00 | $3.09 | $11.46 |
| 1/17/2009 | $50.00 | $2.30 | $12.25 |
| 1/17/2009 | $55.00 | $1.71 | $12.84 |
| 1/17/2009 | $60.00 | $1.27 | $13.28 |
| 1/16/2010 | $10.00 | $13.67 | $0.88 |
| 1/16/2010 | $15.00 | $12.56 | $1.99 |
| 1/16/2010 | $20.00 | $11.33 | $3.22 |
| 1/16/2010 | $25.00 | $10.14 | $4.41 |
| 1/16/2010 | $30.00 | $9.04 | $5.51 |
| 1/16/2010 | $35.00 | $8.06 | $6.49 |
| 1/16/2010 | $40.00 | $7.18 | $7.37 |
| 1/16/2010 | $45.00 | $6.41 | $8.14 |
| 1/16/2010 | $50.00 | $5.73 | $8.82 |
| 1/16/2010 | $55.00 | $5.14 | $9.41 |
| 1/16/2010 | $60.00 | $4.62 | $9.93 |
| 1/16/2010 | $65.00 | $4.16 | $10.39 |